281 P.2d 149

**FIDELITY AND CASUALTY COMPANY OF NEW YORK, a Corporation, Plaintiff-Appellee,**

**v.**

**A. R. ANGIER, d/b/a Coronado Courts, Defendant-Appellant.**

No. 5823.

Supreme Court of New Mexico.

March 10, 1955.

Dean S. Zinn, Santa Fe, for appellant.

F. Gordon Shermack, Santa Fe, for appellee.

SADLER, Justice.

The plaintiff (appellee) recovered a money judgment against defendant for adjusted premium due on a workmen's compensation policy. Feeling himself aggrieved he brings the matter before us on appeal for a revision and correction of the judgment so entered against him.

The trial was before the court without a jury and resulted as indicated above. In a decision filed the court made certain findings of fact and conclusions of law upon which it based its judgment. The findings are not complicated and their substance will be stated.

The defendant owned a motel known as Coronado Courts on the outskirts of Santa Fe. When about to begin certain construction on his premises in May, 1949, he applied for and was issued two policies of insurance through plaintiff's local agent in Santa Fe. One of them was a standard workmen's compensation and employers' liability policy, identified as C-6985702 and known as "C-Policy." The other was a comprehensive liability policy, referred to as the "XP-Policy." Each policy was to cover a period of one year from May 18, 1949.

Since the amount of the premium on each policy was to be graduated according to the payroll of defendant, an unknown factor in the beginning, the first billing for premium was based on an estimated payroll, the amount of the premium for this purpose being $144.33 for C-Policy and $44.13 for Policy XP-633306. The defendant paid these estimated premiums upon receipt of statements therefor, subject to a later billing based on audit of defendant's payroll at end of the policy period.

Subsequently, and in due course, the plaintiff, through one of its auditors, made the audit contemplated for the policy year ending May 18, 1950. The audit was made in defendant's presence and upon completion was signed and approved by him. Due to lack of certain essential forms therefor, the audit on the XP-Policy was not made at the same time as that for the C-Policy. Thereafter, on two occasions, on August 3, 1950, and on September 12, 1950, the auditor mentioned made two requests on defendant for the right to inspect his books and records preliminary to an audit in reference to the XP-Policy mentioned. Both requests

being refused, the plaintiff's auditor prepared an estimated audit based on the previous one made as to C-Policy, the figures for both audits remaining constant. Both were then forwarded to the Kansas City office of plaintiff for computation of the rates applicable and the premium due on the XP-Policy.

Based upon the audits mentioned, the defendant was billed for additional premiums, as follows: On C-Policy the sum of $550.22 and on XP-Policy the sum of $215.74. Though often requested, the defendant declined to pay any part of the additional premiums.

The original audits made by plaintiff's auditor, as hereinabove stated, were not produced at the trial, nor was there any showing that they were not in existence or could not be produced by the exercise of reasonable diligence. Indeed, the plaintiff made no effort to support the original audits for purposes of the trial. The amount of premium to be paid under each policy is variable and cannot be determined from the policy itself and a knowledge of the amount rests peculiarly with plaintiff.

The defendant was under the mistaken impression that the amounts of estimated premiums were the limit of his obligations under the terms of the policies. He never had any dispute as to the correctness of the audit made until the date of filing his answer and then, only, as to the rates of premiums charged. However, the local agent for plaintiff verified such rates, at defendant's request, as being correct, after careful rechecking by him of the legal rates applicable to the figures shown in such audits. With reference to the so-called XP-Policy there is no legal evidence before the court as to the accuracy, correctness, details or results of the claimed audit.

Having found the foregoing facts the court concluded that the defendant became bound and obligated under the terms of the policies to the extent of the actual payroll of defendant's employees during said period; that defendant accepted said policies and was bound by the terms thereof. Such policies provided for the collection of various premiums based on defendant's estimated payroll of employees for the policy period but the advance premium paid did not constitute payment in full under the policies. The final and decisive conclusions were Nos. 5 and 6, reading:

"5. That the defendant is indebted to the plaintiff, under the provisions of the C Policy in the sum of $550.22, together with interest at 6% per annum, from the 18th day of May, 1950.

"6. That the defendant is not indebted to the plaintiff under the provisions of the XP Policy, because of failure of proof."

Judgment was entered, accordingly, against the defendant in plaintiff's favor in

the sum of $550.22. It is for the reversal thereof that this appeal is prosecuted by the defendant.

It is clear from the foregoing findings that notwithstanding the failure on plaintiff's part to produce the original audits, the trial court deemed the evidence sufficient as to warrant judgment for premium on C-Policy and insufficient to support a judgment for the final premium due on XP-Policy.

The defendant, as appellant, presents but two claims of error as grounds for reversal of the judgment against him. They are (1) that there is no substantial evidence to support the judgment as to the C-Policy; and (2) that the trial court abused its discretion in granting plaintiff a continuance when the cause first came on for trial. We shall deal with them in the order stated.

Unquestionably, counsel for defendant rests his challenge to the sufficiency of the evidence to support the judgment for balance of premium on C-Policy on the trial court's finding No. 8. It recites failure of the plaintiff to produce the original audits furnishing data for calculating balance of premium due on each policy. As to XP-Policy, which extends comprehensive liability, the defendant appears in poor position to make capital out of plaintiff's failure to produce the original or copy of any audit, in view of his failure, after two requests, to permit plaintiff to see his books and records for the purpose of making an audit.

This he was obligated to do under the terms of his policy. Be that as it may, the defendant is in no way prejudiced, there being no judgment against him for a balance of premium on this policy.

The situation is different, however, as to unpaid premiums on C-Policy. If, actually, the original audits of defendant's books and records had furnished sole proof of the correctness of premium calculations, the exclusion from evidence of original, or authentic copies thereof, where best evidence not available, would have been fatal to recovery. Where, however, other evidence in the form of testimony and admissions leaves no doubt as to correctness of the amount of premium claimed, then the failure to get in evidence the original audit on which the premium calculation was based, is of little consequence. That is exactly the situation in the case before us.

Both the local agent of the plaintiff and its auditor as well were present and testified in person. The sole purpose of getting the audits in evidence, of course, was to verify correctness of the premium calculations made in Kansas City office of plaintiff, and thereby establish the amount unpaid. It was shown by plaintiff's local agent that the audit bore defendant's signature, that he made no complaint of the auditor's findings, himself furnishing the figures to the auditor. In fact, there was evidence that he had approved same. Certainly he never disputed

its correctness and a letter from local agent giving correct amount of the premium based on to C-Policy sent defendant was put in evidence. He complained only of the rate and of a mistaken impression on his part that his initial payment was in full. The letter read:

"As you requested, we have thoroughly checked our code numbers and rates under workmen's compensation policy with our Special Agent, and find that the additional premium of $550.22 is correct, as per your copy of the final audit.

"Your early remittance will be greatly appreciated."

In addition, there was extended testimony from Joe W. Alverson, Casualty Auditor for the plaintiff. It was he who made the audit in defendant's presence and from figures given him by defendant. The defendant admitted the audit was made in his presence and would not deny that he signed it. We are fully satisfied there was sufficient evidence, independently of the audit itself, to support the court's finding that the premium unpaid was the exact amount sued for and the amount due under terms of the policy. This claim of error is denied.

The second claim of error is based upon the action of the trial court in granting a four-day postponement while the defendant's motion to dismiss was pending undisposed of. The purpose was to secure either a deposition from, or the presence of, the auditor who examined the plaintiff's records. Whether viewed as what in effect it was, the granting of a motion to reopen the case and take additional evidence; or, as a simple postponement, in either case, the court possessed a broad discretion in the premises and we see no abuse in its exercise of that discretion. 17 C.J.S., Continuances, §§ 5–6, page 191; 12 Am.Jur. 450, § 5, Continuances. See, also, Waldo v. Beckwith, 1 N.M. 182; Perea v. State Life Ins. Co., 15 N.M. 399, 110 P. 559; State Bank of Commerce v. Western Union Tel. Co., 19 N.M. 211, 142 P. 156, L.R.A.1915A, 120.

In view of the conclusion reached, it will be unnecessary to consider argument made by plaintiff that, regardless of trial court's exclusion from evidence of the audit as to C-Policy, we should, nevertheless, consider it in evidence because erroneously excluded. Compare Supreme Court Rule 17(2).

It is only fair to state that counsel representing appellee in this court did not represent him below. It follows from what has been said that the judgment should be affirmed.

It is so ordered.

COMPTON, C. J., and LUJAN, McGHEE and KIKER, JJ., concur.