## THOMAS M. JUDD *vs.* JAMES M. FARGO.

In an action against the proprietor of a farm adjoining a highway, for damage sustained by a person travelling on the highway with due care, through his horse's taking fright at a sled with some tubs on it, which the defendant had left in the highway, near one of his outbuildings into which he intended to remove the contents of the tubs, the question whether the sled and tubs were a nuisance which render'd the defendant liable depends upon whether they had remained in the highway for an unreasonable time: and upon that issue it is competent for the defendant to prove that the highway was little frequented, particularly at the time of year when the accident occurred; but not that the state of things in the outbuilding was such as to render it convenient for him to .eave the sled and tubs in the highway, nor that his neighbors were accustomed to do so under similar circumstances; and the use made of highways by others under such circumstances does not determine his liability.

TORT to recover for the death of the plaintiff's horse, occasioned by taking fright at obstructions which the defendant had put in a highway, and jumping down an embankment in running away from them.

At the trial in the superior court, before *Putnam*, J., the plaintiff's evidence tended to show that about ten o'clock in the morning of Monday, April 5, 1869, he was travelling, with his horse and sleigh, on a highway in the town of Monterey, which led past the defendant's farm, when he came upon a pile of wood and a sled in the highway ; that there were two sap-tubs on the sled, each of them about two and a half feet high and of the capacity of three barrels ; that one of the tubs was full of maple-sap and was standing on its bottom, and the other was partly full and was tilted ; that the defendant had placed the wood and sled and tubs in the highway, in the position in which they were ; and that the plaintiff's horse took fright at the sled and tubs, and ran along the highway about ten rods, and down the embankment, and was killed.

The defendant's evidence tended to show " that one corner of his sap-house was on the line, and the other front corner nine feet back of the line, of the highway ; that the wood lay in front of the sap-house, partly on the defendant's land and partly in the highway ; that the sled stood in the highway, obliquely to the travelled path, the hind end from two to five feet from the nearest sleigh track, and the wood further from the track than the sled ; that some of the wood had been there three or four weeks, and some was thrown upon the pile about ten days before ; that the sled, with the tubs thereon, filled with sap, had been drawn and left by the defendant in said position between five and six o'clock on the Saturday afternoon previous, with the intention of transferring the sap from the tubs to tubs and a boiling-pan in the sap-house, but the sled was not unloaded that night ; that between five and six o'clock on Monday morning the defendant made his fire and then returned to his house for breakfast, after which he went again to the sap-house, took part of the sap from the hind tub, raised one side of that tub, with the remainder of its contents, so that it stood obliquely inclined towards the sap house, and left it in that position, the other tub standing on its bottom and the sled in the same position as on the previous Saturday evening ; that the defendant then started to go to a town meeting, and had walked only a few rods when the accident hap-

pened ; that on Tuesday morning the defendant drew the sled away, but returned it in the course of the day to the same place, and left it standing, with the tubs on it, substantially in the same position ; and that it was customary for him to leave it standing there from time to time in the same way."

The defendant's counsel proposed to prove, in his behalf, " that his tubs in the sap-house were sufficient for ordinary occasions, but that on this Saturday afternoon, by reason of an extraordinary flow of sap, they were filled, which delayed the unloading and removal of the sled ; " and he proposed this question to the defendant, who was examined as a witness : " Were your tubs in the sap-house full on this Saturday night ? " But the offer of proof, and the specific inquiry, were excluded as immaterial.

He also proposed to show " the locality and amount of travel on this highway, for the purpose of showing that it was but little used at any season, and of still less travel at this season of the year." But the evidence was excluded in like manner.

He further asked a witness this question, " What is the use usually made of this highway, and of highways in its vicinity, by others owning land on said highway ? " This inquiry was also excluded as immaterial, the judge stating " that he should instruct the jury that under certain restrictions, and for certain purposes, the defendant had a right to leave wood, sleds and tubs in front of his premises."

The defendant prayed for an instruction to the jury " that the owner of land may make such reasonable use of the highway adjoining his land as is usually made by others similarly situated." The judge declined to adopt this instruction ; and after instructing the jury as to the rights of adjoining proprietors in highways, instructed them further, " that the defendant was guilty of a nuisance, if he unnecessarily and improperly allowed the sled and tubs to remain in the highway ; that he had the right to allow them to be and remain a reasonable time for the purpose of transferring them to and upon his own premises ; that if he allowed them to remain an unreasonable time for such purpose (of which the jury were to judge) it was an unnecessary and improper use of the highway ; that he was bound to remove them as soon as

he reasonably could, under all the circumstances ; that in this case they might exclude Sunday in considering the question of reasonable time; that, while he had a right to use the highway temporarily, for such reasonable time and for such purpose, he had no right to occupy it for the purpose of storage ; that in this case the jury were to say whether the defendant's purpose was to store the sled and tubs and wood in the highway for his convenience, or to transfer them in a reasonable time to his own premises ; and that if he allowed them to remain there for storage, or if only for transfer, and a reasonable time for transfer had elapsed, and they were calculated to frighten horses, and did frighten the plaintiff's horse so that it was rendered unmanageable and was killed by reason of such fright, and the plaintiff drove a proper horse and was himself in the exercise of due care, the plaintiff could recover from the defendant the damage he sustained thereby."

The jury returned a verdict for the plaintiff, and the defendant alleged exceptions to the exclusion of evidence, and to the instructions above recited " so far as they are in conflict with the rulings prayed for and refused."

*S. W. Bowerman & J. Branning*, for the defendant.

*M. Wilcox*, for the plaintiff.

AMES, J. Upon the question whether the use which the defendant was making of the public highway adjoining his own land was reasonable, he was entitled to show, if he could, that it was an obscure cross-road, but little frequented by travellers at all seasons, and particularly at the time of year when the accident happened. The rule is laid down in *O'Linda* v. *Lothrop*, 21 Pick. 292, that, in deciding what may be deemed a proper and reasonable use of a way, public or private, much must depend on the local situation, and much upon public usage. Carriages may stand, and goods may be received, at the door of the adjoining proprietor, although some temporary inconvenience to travellers may thereby be occasioned. All that the law requires in such a case is that the obstruction shall not be continued for an unreasonable length of time. *Commonwealth* v. *Passmore*, 1 S. & R. 217, 219. *People* v. *Cunningham*, 1 Denio, 524. The

standing of a carriage, or the delivery of coals or other bulky articles, by the roadside, in a crowded thoroughfare in a populous city, might occasion so great and general an inconvenience that the reasonable time for the removal of the obstruction would allow no delay that could be avoided. The same kind of obstruction, in a country road but little frequented by travellers, might continue for a much longer time without amounting to a substantial or practical obstruction to the public right. The measure of diligence and reasonable time would be different in the two cases. It appears to us therefore that the evidence offered by the defendant as to the amount and frequency of the travel upon that road, so far from being immaterial, was competent and important, and should have been received.

The evidence offered to show that the state of things on the defendant's premises was such as to render it convenient to him to leave the sled, with its load, standing within the limits of the road ; and also that other persons, owning land on this and other roads in the vicinity, were accustomed to do the like ; was properly excluded. It had no tendency to make out the defence. The judge was right also in refusing to rule that the owner of land may make such use of the highway adjoining his land as is usually made by others similarly situated.

The instructions given to the jury do not appear to have been objected to in any other respect. The exclusion of the evidence as to the frequency of travel upon the road, however, renders a new trial necessary, in which the jury must decide whether, under all the circumstances, the defendant at the time of the accident was making a proper and allowable use of the road.

*Exceptions sustained.*