## Chicago, Rock Island & Pacific Railway Company v. John Daugaard.

### Gen. No. 11,720.

1. NEGLIGENCE—*what does not excuse.* The doing of a thing in the usual way, is not evidence that such way is safe, and is no excuse for negligence.

2. MASTER—*duty to instruct.* It is the master's duty to caution an inexperienced servant as to dangers of his employment, unless such dangers, and the means of avoiding them, are apparent.

3. ASSUMED RISK—*what not.* A risk cannot be deemed to have been assumed unless the servant both knew of the defect and appreciated the dangers which arose therefrom.

Action on the case for personal injuries. Appeal from the Superior Court of Cook County; the Hon. HENRY B. WILLIS, Judge, presiding. Heard in this court at the March team, 1904. Affirmed. Opinion filed January 23, 1905.

W. T. RANKIN and BENJAMIN S. CABLE, for appellant.

THOMAS J. MORGAN and DARROW & MASTERS, for appellee.

MR. JUSTICE ADAMS delivered the opinion of the court.

The appellee, in a suit against appellant for negligence,

*per quod* he was injured, recovered judgment for the sum of $3,000, from which judgment this appeal is taken. The declaration consists of six counts, in each of which it is averred, in substance, that the defendant on, to-wit, April 19, 1899, was possessed of, controlled and operated a wood working machine in the city of Chicago, in Cook county, together with divers saws, pulleys, belting, machinery and appurtenances; and plaintiff, at said date, was a common laborer in defendant's employ, engaged in performing unskilled labor in and about said shop, and under the direction of defendant's foreman, and was directed by said foreman to cut certain oak planks into wedges, by means of a circular rip-saw belonging to the defendant, etc. The negligence averred in the different counts is, in substance, as follows:

1st count. The defendant, by its servants, negligently failed to provide the plaintiff with reasonably safe appliances to cut said lumber into wedges.

2nd count. The defendant, by its servants, negligently constructed, under the direction of the foreman, a certain appliance called a form, which was used in connection with said rip-saw, in an unworkmanlike manner, so that plaintiff could not safely use the same in connection with said rip-saw.

3rd count. Defendant, by its servants, and under the direction of said foreman, negligently placed a certain appliance called a guage, which was used to hold the lumber which plaintiff was sawing, three inches from the saw; and to regulate the size of the wedges, too close to the saw, and in a dangerous position, and too high, so that plaintiff could not safely use the saw.

4th count. There was a certain appliance called a runway connected with the rip-saw, which was used to direct the course of and carry away the wedges sawed off by plaintiff, one end of which runway was used to prevent the handle of the form (which form was used to push the lumber against the rip-saw) from being pushed beyond the edge of the rip-saw. Negligence averred. The defend-

ant negligently constructed said runway in a careless and unworkmanlike manner, so that it became obstructed by the wedges which plaintiff was sawing, and the end thereof, which should have acted as a stop to the form, did not so act, but became loose and misplaced, so that the form did not stop, and the handle thereof went past and beyond the edge of the rip-saw.

5th count.    Defendant so negligently placed said saw on its axle or bearings that it was loose and insecure.

6th count.    Defendant, well knowing that plaintiff was a common laborer, and unqualified to perform skilled labor, negligently removed plaintiff from his work as an unskilled laborer, and ordered and directed him to perform labor requiring great skill, to-wit, cutting lumber into wedges, and using and operating for that purpose a certain circular rip-saw, and plaintiff, who had no experience in such labor and not knowing the risks and dangers connected therewith, was injured, etc.

In each count due care on plaintiff's part is averred, and also, that by reason of the negligence averred, four of plaintiff's fingers were cut off by the saw.    The defendant pleaded the general issue.

The plaintiff, Daugaard, was employed by the defendant's foreman to work for defendant as a common laborer, at fifteen cents per hour, May 1, 1898, and remained in defendant's employ from that date till April 19, 1899, when the accident occurred.    He testified that during all that time he worked all over defendant's saw mill; that he handled lumber and assisted other employees, who were running machines, by taking the lumber away from the machines.    He had used a cross-cut saw five or six times before the accident, by direction of the foreman, and had sometimes used a grooving knife, both of which were operated by machinery, and the evidence tends to prove that in using the cross-cut saw, or the grooving knife, there was no danger of his hand coming in contact with the saw or knife.    He also testified that he saw the machine at which he was working when hurt every day he worked at

defendant's mill, and that he had assisted the operator of that machine by taking lumber away from it; but that he had never operated a circular rip-saw until the day next before the accident. He testified, in regard to his employment, that when he was not running the cut-off saw, or the grooving machine, he was doing general work round the mill, anything which the foreman told him to do. His evidence as to how he came to work on the rip-saw machine is uncontradicted, and is in substance as follows : "Frank Lemkuhl, the foreman of the saw mill, came in from the yard and was standing on the machine, and he hallooed at me, and I came up, and he asked me if I could run the saw, and I said I didn't know, and he said, 'I will show you,' and he fixed the saw and table and set up the guage. He set four or five pieces—blocks—and told me, 'Now go ahead, it is all right, man.' He told me nothing else. I was sawing wedges, or saddles, which were about 6 inches long, $2\frac{1}{2}$ inches wide at one end, and about $\frac{3}{4}$ of an inch at the other end. They were of different sizes, between 2 and 3 inches thick, some of them hard and some soft wood. The wedges stopped, wouldn't come out on the take-off board, and I told this to the foreman as he passed, and he said, 'That will be better tomorrow; you will get a bigger saw.' " The plaintiff worked about an hour that day, April 18, 1898, and sawed a barrel of wedges, and the next morning went to work at the same machine, without further orders. A larger saw was put in the table the next morning, and after plaintiff had been at work about half an hour sawing wedges, as he had done the previous day, the accident occurred. Three of the fingers of his right hand were cut of about the second joint, so that when surgically treated there remained only stubs of fingers between the hand and where the second joints were. The little finger was cut off between the second joint and the end of the finger. The thumb was not injured. The form heretofore referred to, and which will be more particularly described hereafter, is of wood and is used to push the lumber to be sawed forward toward and against the circular rip saw,

and has a straight round perpendicular handle set in the top of it, which is grasped in the right hand of the operator, and, by means of it, he pushes forward the lumber which is being sawed. The form was put in evidence and has been sent up with the record. The appliances for sawing were so arranged that when a wedge was sawed the form was stopped, and when it was stopped the hand of the operator, grasping the handle of the form, was one and one-half inches from the edge of the saw. There is no controversy about this. Plaintiff testified : " When the form had stopped still, and the wedge was sawed clear off, my hand was then about an inch and a half from the saw." Plaintiff testified that he did not know how the accident happened; that he was pushing forward the form; that he had his hand on the handle of the form all the time, and that his hand was not thrown off or from the handle before the accident, and that he cannot tell "for sure" whether his hand opened, but is sure that it stayed on the post or handle; that the only thing he could think was that his arm turned against the board or guage next the form. While the plaintiff's fingers must have come in contact with the saw, there is no direct evidence how this happened. What plaintiff thinks is, of course, merely speculative and conjectural. In other words, it is his conclusion.

The circular rip-saw was operated by machinery. The following description of it, its arrangement and appliances, and the manner of its operation, is taken from the brief of appellant's counsel, and is in accordance with the evidence :

" The table in which this rip-saw is set is about three feet wide, five or six feet long, and three and a half feet high. The saw comes up to a height of several inches through the middle of the table, and, therefore at a point about a foot and a half from the operator, who stands in front of it. As one faces the saw, there is an upright guide board or guage six inches high, standing a few inches to the right of the saw, and running parallel with the saw, and extending from the edge of the table nearest the operator to a point opposite the saw. The form that the operator slides

along this guide is a solid block of wood 20½ inches long, 3½ inches wide and 2¼ inches high, at the end nearest the operator; at the other end there is a notch that is an inch and a quarter wide at the extreme end of the form, and which runs back into the form, diagonally, about six inches, to a point about a quarter of an inch from the edge of the form that is next to the saw. There is an upright handle four inches high and an inch in diameter, exactly in the middle of this form. When the operator is sawing out running board wedges, which are small cleats that go under and support running boards on the top of freight cars, and are about six inches long, a couple of inches thick at one end, and from a quarter to half an inch thick at the other end, he fits a block of wood into the notch in the form and holds this block in place there with his left hand. With his right hand he grasps the upright handle of the form and pushes it toward the saw, to saw a wedge out of this block. He slides the form along the guide, in order to saw out wedges of a uniform size, which should be approximately the size of the notch in the form into which is fitted the block out of which a wedge is sawed. It is four and a half inches from the nearest point of the notch in the form to the upright handle, already described. After a wedge is completely sawed out of a block, the form can be pushed a couple of inches further, and it then strikes and comes to a stop against a runway back of the saw, along which runway the wedges that have been sawed are carried off the table. When a wedge is sawed completely out, and after the form comes to this stop, the right fingers of the operator, if clasped around the upright handle, come within about an inch and a half of the teeth of the saw, making it absolutely impossible for the fingers of the right hand to be cut, if they are clasped around the upright handle of the form, as appellee says his fingers were clasped at the time he received his injury."

There is no evidence that there was any defect in the material of the saw, or any of its appliances, or that it, or any of the appliances used in its operation, was out of

repair, and the uncontradicted evidence is, that when a wedge was sawed the form stopped, so that the hand of the operator, if clasping the upright handle of the form, would be about one and one-half inches from the teeth of the saw. We think it apparent from the evidence that plaintiff must recover, if at all, on the ground that he was an unskilled laborer; that defendant's foreman, knowing him to be such, put him to work at the machine without instruction or warning as to the risk, and that the machine was so constructed, and its appliances so arranged, that it was not reasonably safe for one unskilled in such work to operate it, and that this was unknown to, or the danger not appreciated by, the plaintiff.

G. Englesen, witness for plaintiff, testified in reference to a model of the machine, which was proved to be substantially correct, and which was used for illustration and in the examination of witnesses on the trial: "The way you have that model, it is not properly constructed for safety, the way you have it there now, for the simple reason that the hand would come too close to the saw for an inexperienced man, in case they should happen to open the hand like that (indicating), the fingers would be gone; they would come too close to the saw. The other reason is that the guide board on the right is a little too high for the arm, to give the arm a free movement," etc.

Henry Cheatle, a witness for plaintiff, testified that he had examined the model and the saw, and that the saw, operated as shown by the model, was a very crude rigging for such work. He also testified that it requires an experienced man to operate a rip-saw.

The defendant introduced four witnesses, men of experience, in reference to the subject-matter, who testified, without objection, that the machine in question was reasonably safe; but some of these witnesses testified that an experienced man should operate the machine.

Edward Vanderveen, foreman in the wood working department of the Pullman shops, after testifying in chief that, as far as he could see, the machine in question was

reasonably safe for sawing out running board wedges, testified on cross-examination, in regard to work in the Pullman shops, as follows : "I have seen them sawing off these saddles where I am working. We have our gang man, who rigs up the machines. He is a skilled man. Sometimes he saws out these blocks himself, if he isn't busy, unless he puts on one of his helpers. The helper is not a machine man all the time. Of course, he helps on one of the machines. That man has charge over five or six others. These helpers operate the machines from time to time. They are classed with the common laborers until they get a saw. They learn them, and he is practically a learner, under the supervision of the gangman; he is in the course of tuition."

Clifton D. Pettis, general foreman of the car department of the Illinois Central Railroad, testified : "I should say that it would require a man with a certain amount of experience with saws generally, to cut out running board wedges with that saw, set up in that way." On cross-examination this witness testified : "It would require some knowledge to justify putting a man at one of those machines."

Others of defendant's witnesses testified that it would be safe to put an inexperienced man to work at the machine, and some of them testified that similar machines, for the same use, were used in a number of other shops. The question, however, is not whether it was usual or customary to use a machine set up and arranged as the machine in question was, for the purpose for which the latter was used. The question is, whether the machine was reasonably safe, and, especially, whether it was reasonably safe for an unskilled common laborer. The doing a thing in the usual way is not evidence that such way is safe, and is no excuse for negligenc. C., R. I. & Pac. Ry. Co. v. Clark, 108 Ill. 113, 118; Judd v. Fargo, 107 Mass. 264; Hinckey v. Barnstable, 9 Mass. 126; Hill v. Winsor, 118 Mass. 251, 259; Hill v. R. R. Co., 55 Me. 438, 444–5.

Plaintiff's counsel urge that the guide or guage, along-

side of which the form was moved by the operator, was too high; that it interfered with the free use of the operator's arm, and rendered the machine, as arranged, unsafe. As to this the evidence is conflicting, and, so far as the number of witnesses is concerned, the greater number testified that it was not too high. But a model was produced and explained to the jury, and witnesses were examined with reference to the model without objection, and we think the question was one for the jury.

The defendant's counsel contends that the plaintiff was not an unskilled laborer; that he had sufficient knowledge and experience to operate the saw, and that he undertook so to do without objection. Also, that the danger, if any, was open and obvious to him. It is true, he says, that when he sawed a wedge the handle of the form, when the form was stopped by the appliance for that purpose, was within one and one-half inches of the saw; but he was directed by his foreman to run the saw, and, on being asked whether he could run it, he said he did not know, after which his foreman ordered him to go ahead. In Offutt v. World's Columbian Exposition, 175 Ill. 472, it was objected, as here, that the plaintiff knew that it was unsafe to do as he was directed by his employer, in reference to which the court say: "Under the evidence it cannot be assumed, as a matter of law, that the danger was so imminent that no man of ordinary prudence would incur it. The rule is, that where the servant is injured while obeying the orders of his master to perform work in a dangerous manner, the master is liable, unless the danger is so imminent that a man of ordinary prudence would not incur it." Ib. 479. Also, "The plaintiff was not required by law to disobey his master, or by obeying assume the hazard of obedience, unless the danger was so imminent that an ordinarily prudent man would not incur it." Ib. 480. The plaintiff in the case cited was injured by a falling scaffold, which he hung himself, by his employer's direction, in a manner to which he objected, and the plaintiff was not unskilled in the hanging of scaffolds.

The foreman must have known that the plaintiff was in-experienced in working at the rip-saw. The plaintiff, in answer to the foreman's inquiry, told him he did not know whether he could run the saw. The foreman employed the plaintiff as a common laborer, and knew that his only work about the saw had been carrying lumber away from it. Yet, having this knowledge, and presumably knowing the manner in which the saw was arranged and the care required to be observed in using it, to protect the opera-tor's hand, he wholly omitted to caution the plaintiff. In Vol. 2, Bailey's Personal Injuries, sec. 2664, it is said: "One of the recognized duties of a master is not to expose an inexperienced servant at whose hands he requires a dangerous service, to such danger without giving him warn-ing. He must also give him such instruction as will enable him to avoid injury, unless both the danger and the means of avoiding it while he is performing the service required are apparent. These are obligations of the master, and he cannot exempt himself from liability by delegating his power to command the servant to another, upon whom the obligation to instruct and caution is also imposed." It is necessary, to exempt the master from liability, not only that the servant knows of the defect, but that he appreci-ates the danger. Union Show Case Co. v. Blindauer, 175 Ill. 325.

The plaintiff had seen others operating the saw, without accident, but, so far as appears, was not apprised of the care necessary to be exercised to avoid injury. It is noticeable that while the witnesses for the defendant testified to knowledge of similar machines, none of them testified that in any of them the hand of the operator came so close to the saw, in using the machine, as in the machine in question. The evidence of the defendant's witnesses shows, if evidence is necessary, that the rigging of the machine could be easily such that injury to the hand of the operator would be avoided, as, for instance, by moving the handle of the form further back toward the operator. The objections to this by some of defendant's witnesses are trivial, in view of the danger to be avoided.

Uric Major, defendant's most positive witness that the machine was reasonably safe, even for an inexperienced operator, testified: "You could set that pin back, but the closer you get to the saw, when your lumber is coming into the saw, the better it is. Yes, you could cut the saddles all right if you set the pin farther back, and your fingers would be farther away from the saw, but you could not do the work as well. Your fingers would be safer, but I would rather do it the other way," etc. By the words "pin" and "saddles" the witness means handle and wedges.

The rip-saw, as appears from the evidence, revolves between three and four thousand times per minute, and its appliances are so arranged that each time a wedge is cut, the hand of the operator is within one and one-half inches of the saw. We are not prepared to hold that a jury might not reasonably find that a saw so revolving, with its appliances so managed, is not reasonably safe for any operator, however skillful or habitually cautious. It is obvious that, in using the saw, the continuous exercise of extraordinary care is necessary. Every man, however cautious, may have an unguarded moment, and constant exposure to any danger, as in the case of a railroad brakeman, without injury, is apt to induce relaxation of the care necessary for safety.

We are of opinion that the questions whether the plaintiff was an unskilled laborer and so employed and paid; whether or not his knowledge of the machine was such that he understood and appreciated the risk of obedience to his foreman's order; whether the danger was so imminent that a man of ordinary prudence would have refused to obey the order; and whether the machine was or was not reasonably safe, were all fair questions for the jury, on the evidence, and we find no good reason for disturbing the verdict. No objection is made to any of the instructions, nor is it objected that the sum awarded as damages is excessive.

The judgment will be affirmed.

*Affirmed.*