Nellie M. Oran and her four children brought this suit in the District Court of Grayson County, Texas, on the 1st day of February, 1905, to recover against the Houston Texas Central Railroad Company, on account of the death of Ben F. Oram, the husband of Nellie M., and the father of her four coplaintiffs, minors, respectively, three, five, six and eight years of age. Oram's death was caused by his getting his foot caught in one of the frogs in defendant's yards at Sherman, Texas, on the 10th day of December, 1904, while he was acting as switchman, and being run over by a car which he was attempting to uncouple from another while they were being pushed back by an engine.
Negligence was charged against defendant in various particulars, but the sole issue of negligence insisted on upon the trial and submitted to the jury was that of Kitson, the engineer, in not properly obeying the signals given him by Oram.
Defendant answered by a general denial and pleas of assumed risk and contributory negligence. The case was tried before a jury, resulted in a verdict for plaintiff, was appealed from, and reversed. A second trial was had, which, on the 12th day of May, 1906, resulted in a verdict for plaintiffs for $16,000, apportioned $8,000 to Mrs. Oram and $2,000 to each of the children.
We find that Nellie M. Oram was the wife of the deceased, Ben F. Oram, and that the other appellees are the children of that marriage; that Ben F. Oram was killed on the 10th day of December, 1904, while in the discharge of his duty as a switchman in appellant's railroad *Page 528 
yards in the city of Sherman, by being run over by a car which he was at the time attempting to uncouple from another car. He, in obedience to instructions, made an effort to uncouple the car, and while so doing got his foot fastened in one of the frogs of the track, and, being unable to extricate himself, the moving car ran over him. There is evidence tending to show that, in the discharge of the duty in which he was then engaged, it was necessary for him to go in between the two cars in order to uncouple the same. Immediately prior to the performance of this duty, and in his forward movement to perform it, he signaled the engineer in charge of the engine to which the cars were attached to stop. The engineer did not immediately obey the signal, but permitted the engine and cars to move some distance before he stopped the same. And there is evidence which justifies the conclusion that if the engineer had promptly and immediately obeyed the signal to stop given to him by Oram, which signal was given in the discharge of his duty, the cars could have been stopped before Oram reached the point on the track where the frog was located, and thereby would have escaped the result that followed. And there is evidence upon this subject which justifies the conclusion that the engineer who received the signal was guilty of negligence; or, in other words, did not exercise ordinary care under the circumstances in not immediately stopping the movement of the cars. It appears from the facts that Kitson, the engineer, saw and understood the signal given by Oram.
There is some complaint made to the effect that the verdict and judgment below are excessive. We will not undertake to set out the evidence bearing upon this subject, but merely dispose of it with the statement that, in our opinion, the evidence justifies the amount of the verdict found by the jury.
Appellant's first assignment of error complains of the action of the trial court in refusing to submit the following instruction asked by it: "If you believe from the evidence that the method and time adopted by Kitson in applying the air on his engine, and bringing his engine to a stop, was such as is approved as proper in railroading by a person skilled in the business, and in keeping with ordinary care, you will return a verdict for the defendant."
The trial court admitted evidence bearing upon the subject as to what was the duty of an engineer upon receiving a stop signal; and several witnesses testified in behalf of plaintiffs that, in obedience to such signal, it was his duty to have immediately brought his engine to a stop as speedily as possible; that it was not the exercise of his judgment that would control the matter, but it was a situation to be determined by the switchman who gave the signal. On the other hand, a number of witnesses testified in behalf of defendant that, in obeying the signal with reference to the time when the train should stop, was a matter to be determined by the engineer. The trial court, in its charge, permitted the jury to determine the usual and customary method of doing such work in the defendant's yard, and in effect instructed them that, if the engineer could have stopped the engine after the stop signal was given according to the usual and customary method of doing such work in the defendant's yards, and that such failure was the want of the exercise of ordinary care, to find against the appellant *Page 529 
on this issue. On the other hand, he instructed the jury, in effect, that if the failure to stop was in obedience to the usual and customary method of operating an engine in appellant's yards in the exercise of ordinary care, the result would be that the engineer was not guilty of negligence.
In determining whether the trial court correctly refused this charge it is not necessary that we should enter upon the debatable ground that the alleged negligent conduct of a servant can or can not be determined by the general manner of doing such work by persons generally skilled in that business, for upon this subject there is much conflict of authority; but, if it were necessary to be decided, we would be inclined, in cases where it is necessary to consider and determine the effect of an alleged negligent act, in connection with the time, place and manner of its performance, to follow the rule announced in Pulsifer v. Berry, 87 Me. 410, and like cases. It is there said: "In Deering on Negligence, section 9, it may be stated as a general rule that, where a party is charged with negligence, he will not be allowed to show that the act complained of was customary among those engaged in similar occupations, or those placed under like circumstances and owing the same duties. In Hill v. Portland R. Ry. Co., 55 Maine, 438, the plaintiff's horse was frightened by a loud and sudden blowing of defendant's locomotive whistle, and evidence of custom in that respect on other roads was held rightly excluded. The court says in the opinion: 'It does not appear in terms whether the object was to prove a general custom on all railroads; but if such a general custom could be established it would not be a legitimate defense in this case or tend to establish it. If all the railroads in the country adopt any rule or custom which is unreasonable or dangerous, and productive of injury, the generality of the custom can not, in a given case, in any degree excuse or justify the act. Every case must be determined upon the facts, and not upon the proceedings of other corporations in somewhat similar cases.' To the same effect are the following decisions: Miller v. Pendleton, 8 Gray, 547; Judd v. Fargo, 107 Mass. 264; Lewis v. Smith, 107 Mass. 334; Hill v. Providence N.Y. Steamship Co., 125 Mass. 292; Littleton v. Richardson, 32 N.H. 59; Lawrence v. Hudson, 12 Heisk. (Tenn.), 671; Crocker v. Schureman, 7 Mo. App., 358; Hamilton v. Des Moines Valley Railroad, 36 Iowa 31."
In Congdon v. Howe Scale Co., 29 Atl. Rep., 255, it is said: "The degree of care and prudence required of a master for the safety of his servants can not be measured by the care and prudence exercised by other masters under conditions not shown to be similar." To the same effect is McNally v. Colwell,91 Mich. 535. But, however, as said before, we are not required to take a decided stand upon this question, because in our opinion the trial court correctly refused the charge as framed, even assuming that it would have been proper to have submitted to the jury the question whether Kitson acted in a way approved as proper by persons of skill as railroad engineers.
If such an issue had been proper to be submitted there are essential elements omitted from this charge which were necessary to be stated in order to properly present the question, It is not the abstract question *Page 530 
as to what persons skilled in the business should have done or would not have done, but the question is, what was the duty of such a person, in view of the then situation and circumstances surrounding the parties. The charge as stated presents a question that is practically abstract. How can it be determined by a jury, even taking in view the method and time in which the act was performed, that the one charged with the duty of doing the act has exercised ordinary care, unless the situation is determined by the then existing circumstances? Kitson may have exercised ordinary care in the method and time adopted by him in applying the air, when judged from the standpoint of railroad people generally engaged in similar business; but still a jury, with all of the facts before them, may have justly determined that the exigencies were such that he would not be justified in resorting to the means and the delay that he occasionally employed. And it is difficult to see how a jury can determine the fact of negligence when you take from them the privilege of viewing the situation in the light of all of the facts which tend to explain it.
To say, in this instance, that the engineer would be justified in permitting the car to roll after the stop signal was given, because other railroad engineers in a like situation would have done the same thing, would be to deprive the jury of the right to consider the necessity of the engineer to immediately stop by reason of the fact that the switchman was engaged in a work which was necessarily inherently dangerous, and that the necessity for prompt action depended not so much upon the privilege of the engineer to exercise a discretion, but that the deceased had incurred the risk possibly under the belief that his signal to stop called for prompt action in obedience to the method of performing that character of work in appellant's yards, and that that would be the construction placed upon it by the engineer. The trial court, in its charge, did permit the jury, in passing upon the question of negligence, to take into consideration the method and manner of doing that character of work in the appellant's yards. They could, from the facts surrounding the transaction, in connection with the conclusion that the engineer violated the method of doing business in the appellant's yards, have well determined the fact that he was guilty of negligence on the occasion in question; and if the plaintiffs' cause of action can be predicated upon this state of facts it would be improper for the trial court to instruct the jury that the engineer would be excused in the event he resorted to methods and time of doing the work employed by railroad engineers generally. In other words, if we could admit that the rule contended for in this charge could have been submitted, the charge as framed omits other very material facts; or, in other words, excludes from the consideration of the jury important issues which should have been embraced in the instruction in order to have made it perfect. It may be said that, as the charge is suggestive of the question desired to be submitted, it was the duty of the trial court to reduce the charge to proper form, and state all that was necessary in order to make it perfect. That rule has never obtained in this court. We have from the organization of this court steadily held that a trial court is not required to give an imperfect special instruction. He does not rest under the duty to reduce it to proper form, or to state *Page 531 
elements necessary to be stated that are omitted. In Gulf, Colorado Santa Fe R. R. Co. v. Minter, 93 S.W. Rep., 517, and in other cases, we have expressly passed upon this question, and in the case noted, and others, the Supreme Court refused writs of error.
What we have said, in our opinion, disposes of the second assignment of error.
We have examined those assignments which relate to the refusal of the trial court to give other special charges, and conclude that the charges given by the court covered all the questions involved, and that there was no error in refusing those instructions.
The other assignments raise questions that relate to the facts. These are disposed of by our findings of fact contrary to the contention of the appellant.
We find no error in the record, and the judgment is affirmed.
Affirmed.
Writ of error refused.