## LILLIE v. THOMPSON.

No. 10745.

United States Court of Appeals
Sixth Circuit.

March 28, 1949.

Grover N. McCormick, of Memphis, Tenn. (N. Murry Edwards, of St. Louis, Mo., and Grover N. McCormick, of Memphis, Tenn., on the brief), for appellant.

Cooper Turner, Jr., of Memphis, Tenn. (Cooper Turner, Jr., of Memphis, Tenn. of Counsel: Canada, Russell & Turner, of Memphis, Tenn., on the brief), for appellee.

Before HICKS, Chief Judge, and SIMONS and MILLER, Circuit Judges.

HICKS, Chief Judge.

Appellant sued appellee for damages for personal injuries under the Federal Employers' Liability Act, § 1, 45 U.S.C.A. § 51. The gravamen of her claim was that appellee ordered her to a place of work which they knew, or by the exercise of reasonable care should have known, to be unsafe, and without taking reasonable care for her protection.

On motion of appellee the District Court dismissed the complaint for failure to state a cause of action. We affirmed. 6 Cir., 162 F.2d 716. The Supreme Court granted certiorari. It stated,—"We are of the opinion that the allegations in the complaint, if supported by evidence, will warrant submission to a jury." The judgment was reversed and the case remanded to the District Court. 332 U.S. 459, 68 S.Ct. 140, 142. There it was tried to a jury.

At the close of appellant's evidence a motion by appellee for peremptory instructions was overruled, and at the close of all the evidence a similar motion was overruled. The jury returned a verdict for appellant in the sum of $7500.00. Appellee entered a motion for judgment, notwithstanding the verdict, which the court sustained, and dismissed the suit; hence this appeal.

The question here is, whether there was substantial evidence to support the verdict and the answer requires a review of the evidence.

On January 26, 1944, appellant, a young woman twenty-two years of age, and a telegraph operator, was employed by one Eagan, appellee's Superintendent, and sent to work in a small, one room wooden building near the center of appellee's K. C.

Junction Yard. She replaced a man in this position. Her duties were to receive and transmit messages to and from switch crews in the yard. For three or four days her working hours were from 3:00 o'clock in the afternoon until 11:30 at night, but soon thereafter she was ordered to work from 11:30 at night until 7:30 in the morning. The building in which she worked was about seven feet wide by twenty feet long. The indications are that it was part of an abandoned box car. Although there was a double window in one side of the building, it had a door in front with no glass in it. It was lighted by a small over-hanging electric bulb. The yards around the building were unlighted. There was evidence that it was the custom, when trainmen desired to receive or transmit messages, for them to knock on the door and appellant would unbolt the door and admit them.

On the night of February 6, 1944, Paul McCreight, appellant's Special Agent, was on duty in and around the building until about 12:30 A. M. It was his duty to protect appellee's property and also to protect employees who needed protection. When his tour of duty expired he told appellant goodbye and went away. From that time on appellant had no protection,—none was provided. Shortly thereafter a switchman came, got his orders and went away and appellant bolted the door after him. Soon thereafter, while she was at work, she heard a knock on the door and unbolted it and saw a strange negro man at the door with a crow bar or iron pipe in his hand. He came in before she could close the door, and said, "Don't move." She pressed the dispatcher's button and hollered "Help" and then the negro hit her with the bar or pipe. Her assailant was not an employee of appellee.

W. S. Petty, at work in a building some three or four hundred feet away heard her cries of distress and took a lantern and made his way to her through the darkness. He found her moaning, speechless and unconscious and hanging to a grab iron on the corner of a box car. She was dirty, had gravel in her mouth and her clothes had been practically torn away. She had evidently been dragged across several railroad tracks. It is unnecessary to pursue further the extent of her injuries.

Eight or nine railroads entered Memphis and all save one ran trains slowly through this very large and busy K. C. Junction Yard. In addition to the through trains there were quite a number of switch tracks. There was ample evidence to show that thieves, tramps, hoboes, and other trespassers infested the yard day and night. The yard was "open," that is unenclosed, and to the question, "Do you know as a railroad man that hoboes and box car riders, people stealing rides, go in, come into this yard all the time. Do you know that?", Supt. Eagan answered, "That is right, they don't buy it you see."

Paul McCreight, the Special Agent, testified that he had reported conditions in the yard to Eagan. He said:

"Well, I said that I advised him that no women be employed there to do anything.

"Q. And why? A. Well, for their own protection, liable to get killed any time.

"Q. By whom? A. Well, hoboes, thieves or burglars, most anybody.

"Q. Did they have them down there too? A. Yes sir, they were in and around there."

He further testified:

"Q. What, if any trouble, did you have with hoboes riding freight trains in and about those yards? A. Well, there was quite a few, quite a few."

It is true that Eagan testified that he had no such conference with McCreight, but in the disposition of appellee's motion for judgment, notwithstanding the verdict, we are not concerned with contradictory or countervailing evidence, or with the weight of the evidence. Our question is, whether there was substantial evidence to support the verdict of the jury.

When we read the complaint, as it was interpreted by the Supreme Court, we conclude that there was substantial evidence to support the verdict. There was ample evidence tending to show that Supt. Eagan placed appellant for work at a place which he knew, or by the exercise of reasonable prudence should have known, was one of peculiar hazard for a female em-

ployee and she was left there without protection. We think that the motion for judgment, notwithstanding the verdict, should have been overruled.

The judgment is reversed with directions to overrule the motion and enter judgment for appellant against appellee for the amount of the verdict and interest thereon from the time it was rendered.

Reversed.