John Margevich, Plaintiff-Appellee, v. Chicago and Northwestern Railway Company, Defendant-Appellant.

Gen. No. 46,055.

Opinion filed December 30, 1953. Rehearing denied January 20, 1954. Released for publication February 3, 1954.

LOWELL HASTINGS, DRENNAN J. SLATER, and GERALD M. CHAPMAN, all of Chicago, for appellants.

JAMES A. DOOLEY, of Chicago, for appellee.

MR. JUSTICE KILEY delivered the opinion of the court.

This is a suit under the Federal Employers' Liability Act (45 U. S. C. § 51 et seq.) by a railroad repairman. Verdict was for plaintiff in the amount of $37,500. Plaintiff remitted $7,500, and judgment was entered for $30,000. Defendant has appealed.

The accident occurred on September 18, 1948. Plaintiff was then sixty-six years old and had been a car repairman for defendant for twenty-eight years. When injured, he was engaged in repairing a grab iron on a boxcar. He fell from a scaffold.

The scaffold consisted of a wooden horse about ten feet high and several feet wide. The top platform was ten or twelve inches wide. There were five rungs at several levels below the platform. The rungs were about 7/8th of an inch thick. The scaffold or horse was placed near the south end of a steel end boxcar so that the bent grab iron on the car could be repaired. On each side of the track where the car was placed were concrete walks. Since the grab iron under repair was

on the west side of the car end, the scaffold was placed close to the concrete walk west of the rail. The grab iron under repair was the top-most fixed to the car end. It was about 18 inches wide and about 12 feet above the ground. It was bent in toward the car.

The repair work was the joint operation of a fellow workman, using an acetylene torch to soften the grab iron, and plaintiff, using a crowbar to straighten it. Plaintiff's companion worked while seated on the top on the scaffold. Plaintiff stood on the second rung on the south side of the scaffold. Consequently the scaffold was between him and the car. After the grab iron was heated, plaintiff was told by his co-worker to "pull." He placed the crowbar under the grab iron and attempted to pull the bar upward. It did not bend. He moved the bar and pulled upward again. The bar slipped and plaintiff fell to the concrete walk and was injured.

The issues raised here are whether there was any evidence of negligence sufficient to submit the case to the jury; whether the court erred in instructing the jury and in ruling on admission of evidence; and whether the verdict is excessive.

██ Plaintiff had the burden of proving that his injury was the result in whole or in part of defendant's negligence or that of its employees. 45 U. S. C. § 51; *Payne v. Baltimore & Ohio R. Co.*, 351 Ill. App. 186; *Kloetzer v. Louisville & N. R. Co.*, 341 Ill. App. 478; *Wilkerson v. McCarthy*, 336 U. S. 53.

██ Defendant was not required to furnish the latest, best or most perfect appliances. The general rule imposes the obligation to furnish reasonably safe equipment suitable for the purpose of the work, and where occupations are attended with great and unusual danger, the obligation is to use all appliances readily attainable for the prevention of accidents. *Perryman v. Missouri Pac. R. Co.*, 326 Mo. 176, 31 S.W.2d 4. The

rule applied under the F. E. L. A. is that the employer's duty becomes more imperative as the risk increases. *Bailey v. Central Vermont Ry., Inc.,* 319 U. S. 350; *Cheffey v. Pennsylvania R. Co.,* 79 F. Supp. 252. The testimony of experts with respect to safer methods used on other railroads is an evidentiary basis upon which the jury can decide whether the equipment and method of the railroad were reasonably safe, or whether it should have used safer equipment and methods. *Boston & M. R. v. Meech,* 156 F.2d 109; *Palum v. Lehigh Valley R. Co.,* 165 F.2d 3.

█ Defendant's contention that there is no evidence of negligence on its part is to be tested by the well-known rule applicable in determining whether a jury question was presented by the evidence. *Wilkerson v. McCarthy,* 336 U. S. 53; *Walaite v. Chicago, R. I. & P. Ry. Co.,* 376 Ill. 59. We shall relate only the testimony favorable to the plaintiff and draw the legal inferences most strongly in his favor: Plaintiff's co-worker was in charge of the work. He made the decision when the grab iron had been heated enough so as to bend easily. After heating the grab iron, he told plaintiff to straighten it. Plaintiff was standing on the $7/8$-inch rung on the outside of the scaffold. When he "pulled up," both of his arms were above his head and his elbows were level with his shoulders. In this operation there is nothing to hold on to. Defendant has weekly safety meetings at which safety in repair operations was discussed and explained. Plaintiff had been instructed by his foreman to do the work the way in which he was doing it.

█ The foregoing evidence tends to prove negligence in defendant's repair method and in directing plaintiff's work.

There is further favorable evidence for plaintiff: The torch which plaintiff's co-worker was using had close to a three-foot flame capacity. Usually safety

paper, asbestos or tin is used to protect the paint during the grab iron straightening process. A good welder can heat a grab iron and not disturb the paint. If paint is burned it blisters. No safety shield was used during the instant work and the paint was blistered.

The foregoing is further evidence of negligence on the part of plaintiff's co-worker, since an inference is justified that the paint had been softened and could cause the crowbar to slip.

There is further favorable evidence for plaintiff: Any work which is overhead requires good footing. Other repairmen on other roads did this type of work on ladders which enabled the repairman to stand with one foot on one step several inches wide, and one on another, or to sit while working so there is no worry about footing. Neither the "Great Western" nor the "Milwaukee" Railroads use horses such as the one defendant used when the accident occurred. The "Milwaukee" uses platform ladders with ample foot space. If the "Great Western" uses horses, it uses them crosswise and lays twelve-inch planks so as to provide about twenty inches of standing space.

The foregoing testimony tends to prove defendant did not furnish plaintiff reasonably safe equipment for the work purpose.

We think, therefor, that the question of defendant's negligence was for the jury.

Defendant, to sustain its contention that the equipment was reasonably safe, argues that plaintiff had used this same kind of scaffold for twenty-eight years and had never seen an accident result therefrom. The question is not what equipment defendant furnished, and plaintiff used, customarily, but whether there was evidence that the equipment and method were not reasonably safe. *Chicago, R. I. & Pac. Ry. v. Daugaard,* 118 Ill. App. 67; *Midland Valley R. Co. v. Bell,* 242 Fed. 803; *Texas & Pacific Ry. Co. v. Behymer,*

189 U. S. 468. This conclusion disposes of the argument with respect to the long use, without accident, of the method employed in straightening the grab iron.

 Defendant argues also that it is free of any charge of negligence because it was entitled to assume that defendant would use the equipment in a safe manner. The fact that plaintiff may have stood with greater safety between the car and scaffold "would not completely immunize" defendant from liability if the injury was in part due to its negligence, for plaintiff's contributory negligence would merely diminish damages, not bar recovery. *Wilkerson v. McCarthy*, 336 U. S. 53; *Virginian Ry. Co. v. Viars*, 193 F.2d 547. Moreover there is evidence that plaintiff had been instructed to stand where he stood. Also, reasonable men might differ on the question whether standing between the car and the scaffold on the ⅞-inch crossboard, using both hands above the head, would have been an appreciably safer position.

 In view of our conclusion with respect to what the evidence favorable to plaintiff tended to show, it follows that we see no merit in defendant's complaint with respect to plaintiff's "summarizing instruction." This instruction summarized the issues. It is not vulnerable to the sole contention made, that the charges of negligence had no foundation in the evidence. It is true that the third charge summarized refers to tools, but it also refers to equipment.

The defendant complains of prejudicial error in the trial court's refusal to give its tendered instruction #22. It was as follows:

"You are instructed that under the present provisions of the Internal Revenue Code of the United States any amount paid plaintiff by defendant under a verdict of this jury is exempt from the payment of federal income taxes for the year of receipt of said amount, although the amount of any dividends, inter-

169

est, gain, profits or income derived from any such amount paid plaintiff by defendant under a verdict of this jury would not be exempt from the payment of federal income taxes."

In support of its claim defendant relies on *Dempsey v. Thompson* (Mo.), 251 S.W.2d 42 and *Hall v. Chicago & N. W. Ry. Co.*, 349 Ill. App. 175. In the *Hall* case this court reversed an order of the trial court granting plaintiff a new trial because the defendant in argument told the jury that whatever plaintiff received by way of verdict was not subject to income tax. That case is not authority for the reversal of a judgment for the failure of a trial court to give this cautionary (*Dempsey v. Thompson*) instruction.

We infer from a study of the *Dempsey* case that the refused instruction there did not contain the words following the word "although" in the instant instruction. The instruction in that case and this are not the same, and the question before us is therefore different.

Plaintiff in that case argued that if the jury should be instructed as to the tax exemption it should also be instructed that dividends, etc., derived from investment of the award, would not be exempt. The Missouri court said that any reference to the tax liability of future income realized from the investment of the award "would tend to confuse and distract the jury and lead it into speculating on the amount thereof."

We see no merit in the claim with reference to Instruction #22. The instruction was bad for the reason given by the Missouri court in striking down the contention made there by plaintiff and referred to in the preceding paragraph. The trial court was justified in refusing to give Instruction #22. It is not necessary, therefor, for us to decide the question of the propriety of instructing the jury with reference to tax exemption of personal injury verdicts.

Error is claimed on the basis of the refusal of the trial court to admit into evidence certain posed photographs showing various hypothetical positions in which the work might have been done. These photographs could not have been offered as real evidence, *Ellis v. Flannigan,* 253 Ill. 397; *People v. Crowe,* 390 Ill. 294, but merely for the purpose of clarification or for demonstrative purposes. Admission for this purpose is within the discretion of the trial court. *Goodrich v. Chicago Great Western Ry. Co.,* 148 Ill. App. 579; *Quincy Gas and Electric Co. v. Baumann,* 203 Ill. 295. There has been no abuse of discretion in this case, since the jury was sufficiently informed by the evidence and photographs already in evidence of the position of the scaffold and the workmen.

Plaintiff's attorney made arguments based upon failure of defendant to supply photographs of the workman doing the work as defendant claims it might have been done. Defendant's attorney answered the argument. No objections were made by either side. The argument was under control of the trial judge, and there is no showing that there was abuse of discretion in exercising this control. *Reinmueller v. Chicago Motor Coach Co.,* 341 Ill. App. 178.

Defendant contends the verdict is so excessive that a reversal for that reason must be ordered. It says the jury was "fully and fairly instructed on the proper measure of damages" but that the amount of the verdict demonstrates conclusively that the jury gave no heed to the instructions and apparently made no deduction for plaintiff's contributory negligence.

The jury's verdict awarded plaintiff $37,500. Was this amount so excessive as to indicate passion and prejudice on the part of the jury or to indicate that the jury failed to diminish its award for plaintiff's "contributory negligence?" We have shown that the defendant was not prejudiced by any error in the exclu-

171

sion of evidence or in the giving or refusing of instructions. Moreover we have shown that the jury may have decided that plaintiff was not negligent. Plaintiff's actual loss of earnings to the time of trial was more than $10,000. In addition to being instructed that actual loss of earnings was a proper element of damage, the jury was told that additional elements were the present value of plaintiff's loss of future earnings, pain and suffering, and physical injuries including permanent disabilities resulting from the injuries.

The accident occurred in September 1948 when plaintiff was sixty-six years old. There is evidence that he was hospitalized for two months where his arm from wrist to elbow was put in a cast, he had a whistling in his head and was given heat treatment for his back; that up to the trial of the case in October 1952 he had not been able to walk without support for his back; that as a result of his fall he had suffered a fracture of the larger wrist bone at the joint and a fracture of the sacrum; that the fractures of four ribs and a dislocated vertebra could have been caused by the fall; that the back injury could be responsible for his permanently stiff back and for the deficiencies in plaintiff's achilles and patilla reflexes; that the reflex deficiencies are permanent; that plaintiff used a cane eight or nine months after leaving the hospital; that he has whistling in his head all the time, cannot sleep well, must be given hot baths several times weekly and must spend about three hours daily in bed; that he has lost his appetite; and that since the accident he has lost more than twenty pounds.

Other testimony was that the vertebral injury could have preceded the injury; also that it did precede the injury; that there was enough arthritis to stiffen the back aside from the injury; that all rib fractures were healed at the time of trial; that plaintiff did not complain of the whistling in the head at the hospital; and

that plaintiff was given a permit to return to work in January 1949, though the doctor did not know what work plaintiff was engaged in.

 Assuming that the jury took as true the testimony favorable to plaintiff, we think reasonable men could differ on the question of excessiveness. *Smith v. Illinois Cent. R. Co.*, 343 Ill. App. 593.

 The trial court presumably thought the verdict was excessive by $7,500 but saw no reason to grant a new trial if plaintiff remitted that amount of the verdict. We cannot say that this ruling was insufficient to assure defendant a fair verdict.

For the reasons given the judgment is affirmed.

*Judgment affirmed.*

FEINBERG, P. J. and LEWE, J., concur.