295 P.2d 1023

Solomon S. PADILLA, Plaintiff-Appellee,

v.

The ATCHISON, TOPEKA AND SANTA FE RAILWAY COMPANY, a Corporation, Defendant-Appellant.

No. 6017.

Supreme Court of New Mexico.

March 12, 1956.

Rehearing Denied April 24, 1956.

B. G. Johnson, James T. Paulantis, Albuquerque, for appellant.

Lorenzo A. Chavez, Arturo G. Ortega, Albuquerque, for appellee.

McGHEE, Justice.

The defendant has appealed from a judgment rendered upon a jury verdict which awarded to plaintiff the sum of $23,750 (the full amount asked) in damages for injuries incurred by him in discharge of his duties as a sheet metal worker in the Albuquerque shops of the defendant. The action was based upon an alleged violation of the Federal Employers' Liability Act, as amended 45 U.S.C.A. § 51 et seq. Specifically, the plaintiff claimed the defendant failed to furnish him a reasonably safe

place to work and as a result a steel block used by him at times to aid in repairing metal jackets removed from steam locomotives fell from the bench where he was working, hitting one of his big toes with a resulting deterioration of his foot and partial loss of use thereof, in addition to pain and suffering; that he is no longer able to work at his trade of sheet metal worker and has had to accept such employment as he could obtain and hold as a laborer unable to stand while working.

The defendant denied any negligence on its part and pleaded contributory negligence on the part of the plaintiff.

 Under the statute under which this action was brought the defense of contributory negligence does not defeat a recovery but only reduces the damages in the proportion such negligence contributes to the injury and the defense of assumed risk has been abolished. There is no dispute here that the federal decisions are controlling; in passing upon cases brought under the Act federal decisional law is binding upon us.

The first point made by defendant is that the plaintiff failed to sustain the burden of proof that defendant was negligent, but, on the contrary, that the accident was caused by the sole negligence of the plaintiff; that, therefore, the trial court erred in refusing to sustain defendant's motion for a directed verdict first made at the close of plaintiff's case and later renewed at the close of all of the evidence.

On February 1, 1954, the date of the injury, plaintiff's principal duty as a sheet metal worker was to repair metal jackets which had been removed from steam locomotives and brought into the sheet metal shop. In repairing these jackets plaintiff worked on a table constructed of wood with a half-inch steel plate on top. The table was 34¾ inches high and measured 81x96 inches on top, being ¼ inch low at one corner. It had been in the sheet metal shop since 1925 and the plaintiff first used it in connection with his work in 1928. He had assigned to him a mallet, steel hammer, chisel, screw driver, two pair of snips and electric shears, all of which he would place in the tool box behind him. In addition to these tools plaintiff used two metal blocks, one of steel and the other of lead. The steel block was approximately 5x3x2½ inches and weighed between 8 and 10 pounds. The plaintiff stated that as he would pound on the jackets which he placed on top of the table the piece of steel would move along the table and sometimes fall as he was hammering away.

At the time of his injury, while plaintiff was pounding on a jacket with a hammer, the steel block fell off the table, striking him on the right foot.

It seems agreed the tool box was not a suitable place for the storage of the steel block when it was not in use, but there was a small shelf on the tool box (smaller than the block) on which it could have been placed. The excuse given by the plaintiff

for leaving it on the table where he was pounding was that he was required to keep such tool handy and in front of him on the table, and also, that he would have been reprimanded by the foreman had he not kept it there; that he realized the danger of keeping the block on the table and had asked the foreman for a railing around the table so the block would not fall off, or for a peg on which he could put the block and tie it with a string. He also testified he had reported the dangerous condition of the place where he worked at a safety meeting at which the foreman was present. In this testimony he was corroborated by several fellow workers. The foreman testified he did not remember the matter being reported at a safety meeting or any such complaint by the plaintiff. When asked by the plaintiff for the minutes or record of the safety meeting, the foreman answered he had been transferred to California some four or five weeks before the trial and had been unable to find the record since his return. No attempt was made by the defendant to account for the loss of the record.

The plaintiff testified that shortly before his injury he had placed the steel block at the corner of the table about five inches from the edge; that because of the vibration resulting from his pounding it fell from the table and struck his foot.

The foreman testified it was not practical to make the change on the table the plaintiff said should have been made—that often a workman had a jacket to repair which was as large as the table so that a guard or railing was not practical. He also said he would be against the use of a peg mentioned above.

■■ In view of the testimony of the plaintiff and others that the steel block had fallen from the table several times as the result of vibration, we think the definition of negligence by Mr. Justice Holmes in Schlemmer v. Buffalo, R. & P. R. Co., 1907, 205 U.S. 1, 27 S.Ct. 407, 409, 51 L.Ed. 681, is applicable here:

"* * * Negligence consists in conduct which common experience or the special knowledge of the actor shows to be so likely to produce the result complained of, under the circumstances known to the actor, that he is held answerable for that result, although it was not certain, intended, or foreseen. * * *"

■ The defendant showed the plaintiff had used the identical bench on which he was working when injured since 1928, arguing it should not be held liable when he was finally hurt by the falling block. This has the sound of a plea of assumption of risk which is not allowable since the 1939 amendment, Act August 11, 1939, 45 U.S. C.A. § 54. In Tiller v. Atlantic Coast Line R. Co., 1943, 318 U.S. 54, 63 S.Ct. 444, 446, 87 L.Ed. 610, it was stated:

"* * * We hold that every vestige of the doctrine of assumption of risk was obliterated from the law by the

1939 amendment, and that Congress, by abolishing the defense of assumption of risk in that statute, did not mean to leave open the identical defense for the master by changing its name to 'non-negligence'. * * * "

A like long use without accident was interposed in Margevich v. Chicago & N. W. Ry. Co., 1953, 1 Ill.App.2d 162, 116 N.E.2d 914, 917, which that court disposed of in the following language:

"Defendant, to sustain its contention that the equipment was reasonably safe, argues that plaintiff had used this same kind of scaffold for twenty-eight years and had never seen an accident result therefrom. The question is not what equipment defendant furnished, and plaintiff used, customarily, but whether there was evidence that the equipment and method were not reasonably safe. Chicago, R. I. & Pac. Ry. Co. v. Daugaard, 118 Ill.App. 67; Midland Valley R. Co. v. Bell, 8 Cir., 242 F. 803; Texas & Pacific Ry. Co. v. Behymer, 189 U.S. 468, 23 S.Ct. 622, 47 L.Ed. 905. This conclusion disposes of the argument with respect to the long use, without accident, of the method employed in straightening the grab iron."

It seems if there is any evidence in the case to sustain a finding of negligence by a jury, whether it be established by direct evidence or reasonable inference, the United States Supreme Court will not allow an appellate court to overturn such verdict. See Bailey v. Central Vermont Ry., 1943, 319 U.S. 350, 63 S.Ct. 1062, 87 L.Ed. 1444; Blair v. Baltimore & O. R. Co., 1945, 323 U.S. 600, 65 S.Ct. 545, 89 L.Ed. 490; Tennant v. Peoria & P. U. Ry. Co., 1944, 321 U.S. 29, 64 S.Ct. 409, 88 L.Ed. 520; Wilkerson v. McCarthy, 1949, 336 U.S. 53, 69 S. Ct. 413, 93 L.Ed. 497.

After a careful study of the record and the authorities we hold there was sufficient evidence of negligence calling for the submission of the case to the jury and the trial court did not err in declining to sustain the motion of the defendant for a directed verdict in its behalf.

Error is assigned because the plaintiff was allowed to introduce in evidence a mortality table showing his life expectancy. The defendant objected to its introduction on the ground there was no competent evidence showing permanent disability of the plaintiff.

■ The testimony of the medical experts was in conflict as to whether the injury was permanent, hence the trial court did not err in admitting such table. Thayer v. Denver & Rio Grande R. Co., 1916, 21 N.M. 330, 365, 154 P. 691, and the authority therein cited.

The third point relied upon for reversal is that the trial court erred in not granting the defendant a new trial because the damages allowed were excessive.

The members of this Court participating in the opinion agree the damages are excessive, but, like the members of the Third Circuit Court of Appeals in Scott v. Baltimore & O. R. Co., 1945, 151 F.2d 61, 64, 65, there is nothing we can do about it, in view of the federal decisional law on the subject and the lack of anything in the record indicating the verdict was the result of passion or prejudice. We quote all that was said in the above cited case on the subject:

"The third point urged by the defendant is that the damages fixed by the jury at $35,000 are excessive. The members of the Court think the verdict is too high. But they also feel very clear that there is nothing the Court can do about it.

"In the first place, this plaintiff's claim is based on an accident in which he suffered physical injury with claimed mental repercussions. Insofar as the award of damages to him consists of compensation for pain and suffering it is, obviously, nothing that an appellate court can, or a trial court for that matter, measure by a yardstick as to whether the jury has given too much or too little. In the second place there was, as might well have been expected, very sharply conflicting medical testimony as to how badly the plaintiff was hurt. Some of the testimony went so far as to indicate that the plaintiff was merely malingering but there was other testimony, if the jury cared to accept it,

which showed him to be very badly off. It indicated that treatment would have to continue, that the plaintiff could only have a light schedule of work for the rest of his life, and that he would have to change his occupation to carry on any useful activity. Which of these medical experts was to be believed is not something for an appellate court to decide, and nobody would seriously contend that it was. In the third place, the defendant is in a federal appellate court. The damages were fixed by the jury and the verdict was reviewed, so far as the judge has control over the jury's action, by the District Court upon the motion for a new trial. Judicial control of the jury's verdict in this kind of case is primarily for the trial court. Dubrock v. Interstate Motor Freight System, 3 Cir., 1944, 143 F.2d 304. A long list of cases in the federal courts demonstrates clearly that the federal appellate courts, including the Supreme Court, will not review a judgment for excessiveness of damages even in cases where the amount of damage is capable of much more precise ascertainment than it is in a personal injury case. There is no complaint here that the jury were improperly instructed as to the law or that any statutory limit of recoverable amount of damages has been exceeded. We have, instead, a case where no precise rule of translating injury into money can be formulated, where the medical testimony is,

confusing and contradictory and where the trial judge has thought the verdict sufficiently within bounds of reason to refuse a new trial. While as triers of fact we should be inclined, if we agreed with the plaintiff's testimony, to award a smaller sum, we think to do so here would be to pass the point which we, with propriety, may reach."

We also quote from an opinion in the Seventh Circuit on the subject in the case of Larsen v. Chicago & N. W. R. Co., 1948, 171 F.2d 841, 845:

"The Supreme Court has repeatedly said that we may not review the action of a federal trial court in denying a motion for a new trial on the ground that the damages awarded by the jury were excessive. See cases cited in Fairmount Glass Works v. Cub Fork Coal Co., 287 U.S. 474, 481, 485, 53 S.Ct. 252, 77 L.Ed. 439. True it is, that a verdict obtained by appeals to passion and prejudice cannot stand. Minneapolis, St. P. & S. S. M. Ry. Co. v. Moquin, 283 U.S. 520, 51 S.Ct. 501, 75 L.Ed. 1243. But that is not our case. Here there was no misconduct of plaintiff's counsel in making appeals to passion and prejudice, hence we have no authority to tamper with the jury's verdict, or as Mr. Justice Holmes said in Texas & Pacific Ry. Co. v. Behymer, 189 U.S. 468, 469, 23 S.Ct. 622, 47 L.Ed. 905, 'we have nothing to do with that.' Moreover, it is now well settled that the fixing of the amount of damages in an action for personal injuries is peculiarly within the province of the jury, there being no regular standard by which to measure. Mueth v. Jaska, 302 Ill.App. 289, 23 N.E.2d 805. See also Princell v. Pickwick Greyhound Lines, Inc., 262 Ill.App. 298, and Ford v. Friel, 330 Ill.App. 136, 70 N.E.2d 626. There is the additional reason that setting aside the verdict was within the discretion of the trial judge, and in this case we will not presume to substitute our reason and experience for his."

The action of the jury in awarding damages for the full amount asked necessarily included a finding the plaintiff was not guilty of contributory negligence, else it would have followed the instructions on the subject and reduced the damages in proportion to the degree the negligence of the plaintiff contributed to his injury.

■ We are unable to say as a matter of law the plaintiff was guilty of contributory negligence, so the case might be sent back for a new trial on the question of damages. In Tiller v. Atlantic Coast Line R. Co., supra, it is stated:

"No case is to be withheld from a jury on any theory of assumption of risk and questions of negligence should under proper charge from the court be submitted to the jury for their determination. Many years ago this Court said of the problems of negligence, 'We see no reason, so long as the jury sys-

tem is the law of the land, and the jury is made the tribunal to decide disputed questions of fact, why it should not decide such questions as these as well as others.' Jones v. East Tennessee, V. & G. R. Co., 128 U.S. 443, 445, 9 S.Ct. 118, 32 L.Ed. 478. Or as we have put it on another occasion, 'Where the facts are in dispute, and the evidence in relation to them is that from which fair-minded men may draw different inferences', the case should go to the jury."

■ The trial judges have a heavy responsibility in these Federal Employer Liability cases to see the damages are kept within reasonable bounds. They apparently have considerable discretion in passing on motions for a new trial based on claimed excessive verdicts. They sense the atmosphere of the trial, have the feel of the case and have opportunity to observe whether bias, passion or prejudice are present. Without intending the slightest intimation the trial court did not discharge its full duty in this regard, we admonish the trial judges of future cases under the Federal Employers' Liability Act of their responsibilities in this regard.

The judgment will be affirmed.

It is so ordered.

COMPTON, C. J., and LUJAN, J., concur.

KIKER, J., not participating.

SADLER, Justice (specially concurring).

The verdict in this case comes very close to furnishing something "in the record" which, alone and unaided, and in and of itself, reflects the verdict was "the result of passion or prejudice." The complaint first prayed damages in the sum of $13,750. It was later amended to ask for $23,750. The jury gave plaintiff all he asked for. If he had prayed for $50,000 and the jury had continued the generosity of its award by keeping pace with the prayer, is there nothing we could do about it?

I do not interpret the federal decisions as going so far as to say so. In my opinion, when the size of the verdict exceeds all bounds of fairness and reason that fact, in and of itself, affords proof of passion and prejudice. If mere approval of the verdict by the trial judge, in denying motion for new trial, ties our hands in the matter of awarding relief against an obviously excessive verdict under the Federal Employer's Liability Act; then, it is my view we should, in each and every instance, let the United States Supreme Court so declare. I do not think, nor do I interpret what is said in the prevailing opinion as holding, that our hands are so tied. If I believed our present opinion embraced such a holding, I would dissent, instead of specially concurring, as I do.

DAVID W. CARMODY, District Judge, concurs.