299 P.2d 1090

Cirilio RIVERA, also known as Cirilo Suniga Rievera, Plaintiff-Appellee,

v.

The ATCHISON, TOPEKA AND SANTA FE RAILWAY COMPANY, a corporation, Defendant-Appellant,

The A. T. & S. F. Hospital Association, Intervener.

No. 6034.

Supreme Court of New Mexico.

July 31, 1956.

B. G. Johnson, E. L. Mechem, W. F. Kitts, Albuquerque, for appellant.

Lorenzo A. Chavez, Arturo G. Ortega, Albuquerque, Tibo J. Chavez, Belen, for appellee.

PER CURIAM.

Upon consideration of motion for rehearing, the original opinion is withdrawn and the following is substituted therefor.

COMPTON, Chief Justice.

This is an action for damages brought under the provisions of the Federal Employers' Liability Act, as amended, 45 U.S. C.A. § 51 et seq., in which it is alleged appellant negligently failed to provide appellee a safe place to work. The pertinent provisions read:

§ 51. "Every common carrier by railroad while engaging in commerce between any of the several States * * * shall be liable in damages to any person suffering injury while he is employed by such carrier in such commerce, * * * for such injury * * * resulting in whole or in part from the negligence of any of the officers, agents, or employees of such carrier, or by reason of any defect or insufficiency, due to its negligence, in its * * * appliances, * * * track, roadbed, works, * * * or other equipment.

"Any employee * * * any part of whose duties as such employee shall be the furtherance of interstate or foreign commerce; or shall, in any way directly or closely and substantially, affect such commerce * * *

shall be considered as entitled to the benefits of this chapter."

Issue was joined and a jury returned its verdict for $68,500 in favor of appellee. Appellant on appeal is seeking a review of alleged errors.

The decisive questions are: (a) whether appellee was engaged in employment in furtherance of, or which directly, or closely and substantially affected interstate commerce, and (b) whether appellant was negligent in failing to provide appellee a safe place to work as contemplated by the Act.

Both questions require an affirmative answer. Appellee was an extra gang laborer employed by appellant in the repair and replacement of its tracks in the vicinity of Vaughn, New Mexico. As a condition of his employment, appellant furnished him board and sleeping quarters on its work train. The work train was made up of some 25 cars, consisting of bunk cars, work cars and cars in which meals were served appellee and others. On these facts, there can be no question that appellee's employment was in furtherance of interstate commerce. Delaware, L. & W. R. Co. v. Mostyn, 2 Cir., 160 F.2d 15; Id., 332 U.S. 770, 68 S.Ct. 82, 92 L.Ed. 355; Atlantic Coast Line R. R. v. Meeks, 30 Tenn.App. 520, 208 S.W.2d 355; Id., 333 U.S. 827, 68 S.Ct. 453, 92 L.Ed. 1112; Atlantic Coast Line R. Co. v. Smalls, 4 Cir., 216 F.2d 842; Small v. Atlantic Coast Line R. Co., 348 U.S. 946, 75 S.Ct. 439, 99 L.Ed. 740; Id., 349 U.S. 907, 75 S.Ct. 579, 99 L.Ed. 1243.

Compare Atchison, T. & S. F. R. Co. v. Wottle, 10 Cir., 193 F.2d 628.

Bearing upon the question of negligence, the work train was moved into Vaughn in February, 1954. The cars were spotted immediately north of an abandoned roundhouse, on a track paralleling and immediately south of the east and west main line track. Located about .35 feet south of the work train, 6 or 7 outdoor toilets were spaced along for the convenience of employees. On February 21, 1954, appellee and various other employees occupied one of the cars as sleeping quarters. On that day, however, other occupants were away. Appellee visited for a while with occupants of other cars, after which he returned to his own quarters around 8:00 P.M. He retired shortly thereafter, but about 9:00 P.M. found it necessary to go to one of the outside toilets. It was dark and the area was unlighted. As he returned to his car, he was approached by two men, presumably hobos, who had gotten off a freight train which he had observed coming into Vaughn from the west just previously. They first asked him for a smoke and money, and being advised that he had neither, they grabbed him by the arm, began twisting it, and at the same time pushed him toward the train which had just come to a stop. One of the men said, "I will throw him under the tracks" and "I will kill him." They assaulted him further and as a result, he was rendered unconscious. When he regained consciousness, the freight train was gone. Its wheel had evidently rolled over his left hand, causing the loss of all but two fingers. The skin of the hand was missing from the wrist down, except from the ring and little finger.

While the Act does not make the employer the insurer of the safety of its employees, plainly, it is the duty of the employer to furnish the employees a safe place to work. A review of the record convinces us that the evidence warranted the jury in reaching its conclusion that appellant was negligent in the respect charged. There is evidence that the abandoned roundhouse was more or less a rendezvous for hobos. They frequented it at will as a place to make coffee, eat their meals, and for other purposes. Previously, a guard in the area had been disarmed, presumably by hobos. But, at the time of the incident in question, the area was unattended by guards and had been for several months. The presence of suspicious characters was such that appellant's yardmaster had requested and was given an official commission to carry side arms for his protection. Lillie v. Thompson, 6 Cir., 173 F.2d 481; Smalls v. Atlantic Coast Line R. Co., supra; Delaware, L. & W. R. Co. v. Mostyn, supra. Also compare Schulz v. Pennsylvania Railroad Co., 76 S.Ct. 608.

Finally, a twofold attack is made on the verdict; first, passion and prejudice; second, it is attacked as excessive. In this respect, judicial control of the verdict is primarily a matter of consideration of the trial court, and both on motion in

arrest of judgment and motion for a new trial, these questions were reviewed and decided against appellant. Cienfuegos v. Pacheco, 56 N.M. 667, 248 P.2d 664; Lopez v. Atchison, T. & S. F. Ry. Co., 60 N.M. 134, 288 P.2d 678. At first glance the verdict does seem over liberal, but we cannot say it is so arbitrary as to show passion or prejudice nor can we say as a matter of law that the verdict is excessive. Padilla v. Atchison, T. & S. F. Ry. Co., 61 N.M. 115, 295 P.2d 1023; Thompson v. Anderman, 59 N.M. 400, 285 P.2d 507; Hall v. Stiles, 57 N.M. 281, 258 P.2d 386; Turrietta v. Wyche, 54 N.M. 5, 212 P.2d 1041.

Viewing the evidence in an aspect most favorable to appellee, we think the verdict has substantial support in the evidence and consequently should not be disturbed. At the time of his injury appellee had a life expectancy of 15.77 years and was earning approximately $250 per month. Appellant argues that had he worked continuously thereafter, his total earnings would not exceed $48,000. Be that as it may, the argument fails to account for pain and suffering. On regaining consciousness, he first noticed a burning pain in his hand which was bleeding freely. He ran to one of the bunk cars screaming "some tramp beat me up." He was given first aid and sent to the Sante Fe Hospital in Albuquerque, where he remained until April 14, 1954. At first it was felt that the remaining fingers could be saved. He returned to his home in Ballenger, Texas, where he received treatment from local physicians, and during which time he continued to suffer great pain. Later, an amputation of the hand was deemed advisable, and some 6 weeks later he was furnished transportation back to the Santa Fe Hospital at Albuquerque. The morning following his readmission, he was asked to leave without the amputation as he had used his hospital allowance. He was told to go to a county hospital if he felt the need of an operation. He left the hospital and again returned to his home in Ballenger and sought help from the Welfare Department of Texas. He continued to suffer great pain. At the trial, some 15 months later, it was necessary to carry his hand in a sling. Medical experts corroborated him as to his suffering and also testified as to future pain and suffering he may yet reasonably expect. Dr. Boyd testified that appellee's remaining fingers had deteriorated, leaving the skin drawn taut over the bony structure. It was his opinion that an amputation was necessary. The exact amount of damages as would compensate him for loss of earnings, is not reflected by the verdict, nevertheless, the jury is given a free hand in determining the extent of the award for pain and suffering, for which there is no fixed standard of measurement.

In Padilla v. Atchison, T. & S. F. Ry. Co., supra [61 N.M. 115, 295 P.2d 1026], in dealing with excessiveness of verdicts, we said:

"The members of this Court participating in the opinion agree the damages are excessive, but, like the members of the Third Circuit Court of Appeals in Scott v. Baltimore & O. R. Co., 1945, 151 F.2d 61, 64, 65, there is nothing we can do about it, in view of the federal decisional law on the subject and the lack of anything in the record indicating the verdict was the result of passion or prejudice. * * *"

Upon a further consideration of the question, we believe that in cases arising in State Courts under the Federal Employers' Liability Act, 45 U.S.C.A. § 51 et seq., all procedural matters, including review of verdicts for excessiveness, are governed by the law of the forum and not by the Federal Decisional Law. This view finds support in nearly, if not all jurisdictions. The cases are so numerous, we will not list them; they are cited for the first time in appellant's brief on motion for rehearing. Had they been brought to our attention in the Padilla case or in the brief in chief in this case, we would not have held that we could not go into the question of excessive verdicts, absent a showing of passion or prejudice. In this respect, there is no conflict between the Federal and the State Courts. The right to review damages in an appellate federal court is denied because of the Seventh Amendment to the Constitution of the United States, which reads:

"In suits at common law, where the value in controversy shall exceed twenty dollars, the right of trial by jury shall be preserved, and no fact tried by a jury, shall be otherwise re-examined in any Court of the United States, than according to the rules of the common law."

But this limitation does not extend to State Courts.

The judgment will be affirmed, and it is so ordered.

LUJAN, McGHEE and KIKER, JJ., concur.

SADLER, J., dissents.
SADLER, Justice (dissenting in part).

Taking notice of the attack made on the verdict as being excessive and the result of passion and prejudice, the prevailing opinion states:

"At first glance the verdict does seem over liberal, but we can not say it is so arbitrary as to show passion and prejudice nor can we say as a matter of law that the verdict is excessive."

First, let me say at the outset that what is said in the prevailing opinion touching our right to consider the presence of passion and prejudice in the verdict, notwithstanding the trial judge may have given it his approval in denying a motion for new trial, meets with my entire approval. It seems plain, for reasons so well stated in the majority opinion, that we went too far in Padilla v. Atchison, T. & S. F. Ry. Co.,

61 N.M. 115, 295 P.2d 1023, in accepting the federal decisional law on the subject as binding upon us in this class of cases.

I must disagree, however, with the conclusion announced in the quotation from the majority opinion, set out above, that we cannot say as a matter of law this verdict is excessive. It impresses me that it is. Under our Workmen's Compensation Law, the plaintiff would have received for the complete loss of an arm at or near the shoulder 160 weeks' compensation at $30 per week, or $4,800. This is not to say the present plaintiff should be confined to that sum, or to an amount even approximating it.

Nevertheless, the discrepancy between the amount so allowed by the legislature for the complete loss of an arm in an industrial accident and the present verdict cannot fail to contrast in the mind either the miserliness of the one award or the excessiveness of the other. It may even generate in the mind a thought the one is as excessive as the other is niggardly.

At all events, giving due weight to different factors to be considered, it impresses me there is common ground between the two extremes which, occupied by the jury in its deliberations, will be more in line with reason and fairness, and tend to eliminate the showing of passion and prejudice noticeable in this verdict. It is to enable a jury to arrive at that happy medium that I favor reversing the judgment reviewed and remanding this case for a new trial. Compare, Turrietta v. Wyche, 54 N.M. 5, 212 P.2d 1041; Hisaw v. Hendrix, 54 N.M. 119, 215 P.2d 598, 22 A.L.R.2d 285; Frei v. Brownlee, 56 N.M. 677, 248 P.2d 671; Boydston v. Twaddell, 57 N.M. 22, 253 P.2d 312; Thompson v. Anderman, 59 N.M. 400, 285 P.2d 507; Stoll v. Galles Motor Co., 60 N.M. 186, 289 P.2d 626.

The majority concluding otherwise, I dissent.