340 P.2d 409

Thomas A. MORRISON, Frank Earl Morrison, and Whitfield Tank Lines, Inc., a corporation, Plaintiffs-Appellees,

v.

Ray H. RODEY, Administrator C.T.A. of the Estate of Roy Ezra Deaver, Deceased; and Pacific Greyhound Lines, a California corporation, Defendants-Appellants.

Transport Indemnity Company, Intervener-Appellee,

Underwriters at Lloyds and Art Tarro, doing business as Art Tarro & Son Oil Company, Interveners-Appellees.

No. 6492.

Supreme Court of New Mexico.

May 27, 1959.

Rehearing Denied June 26, 1959.

Iden & Johnson and W. F. Kitts, Rodey, Dickason, Sloan, Akin & Robb, Albuquerque, for appellants.

Moise, Sutin & Jones, J. L. Leftow, Albuquerque, for appellees, Whitfield Tank Lines, Inc. and Transport Indemnity Co.

Richard C. Civerolo and Gino J. Matteucci, Albuquerque, for appellees Frank Earl Morrison and Thomas A. Morrison.

McAtee, Toulouse & Marchiondo, Albuquerque, for appellee Art Tarro.

CARMODY, Justice.

On January 22, 1957, in the State of Arizona but near the Arizona-New Mexico line, a vehicle collision occurred on U. S. Highway 66 involving a diesel tank truck and pup trailer hauling fuel oil, and a Greyhound bus. The accident occurred at approximately 6:50 a. m., and as a result thereof the driver of the truck and the alternate driver riding with him were injured and the driver of the Greyhound bus was killed. The plaintiffs in the court below were the two truck drivers and the corporation by whom they were employed, who brought suit against the administrator of the estate of the deceased driver and the defendant Greyhound Corporation. The other parties to the case were by intervention, one of whose claims arose by reason of payment of workmen's compensation to the plaintiff truck drivers and the others by reason of ownership of the tank equipment and the insurance carrier thereon. However, the claims of the interveners, for all practical purposes, are coincident with the claims of the named individual plaintiffs.

The parties to the action will be referred to as they appeared in the court below, the plaintiff individuals having recovered substantial damages for personal injuries and two of the interveners having recovered for damages to the oil truck equipment. It is from the jury's verdict and judgment issued thereon that the defendants appeal, the judgments running against both the estate of the defendant driver and the Greyhound Corporation.

The case was tried on the plaintiffs' complaint for the personal injuries and equipment damages and upon the defendants' cross-complaint against the plaintiffs for the death of the driver and the equipment damages to the Greyhound Corporation's bus. The jury, by its verdict, resolved the issues in favor of the plaintiffs and against the cross-complainants. The sufficiency of the evidence to support the verdict is not challenged, but the defendants raise numerous points of claimed error, either occurring in the trial or subsequent thereto.

The accident occurred on a two-lane highway, with the oil transport traveling in a westerly direction and the bus in an easterly direction. There was snow and ice on the highway to the extent that the center-line was not visible, and the point of collision occurred three to four feet to the north of the center-line or in the lane of traffic occupied by the tank truck. It was not, strictly speaking, a head-on collision, inasmuch as apparently the front of the bus struck the tank truck at a point near the driver's door. Although it was breaking day, both vehicles had their headlights and riding lights on,

and were apparently traveling at about forty-five to fifty miles per hour. The highway was very slippery and the bus until at a point near the place of collision had been traveling with the right-hand wheels on the gravel shoulder. However, just before the collision, the driver apparently turned his vehicle to get back onto the paved portion of the roadway, because the shoulder narrowed and the ground dropped off quite abruptly, leaving very little of the shoulder available for any traffic. Most of the passengers of the bus were asleep. However, five of them were witnesses at the trial either in person or by deposition, but their testimony is rather fragmentary either because of their location as seated in the bus or by reason of the fact that they were sleepy or not paying any considerable amount of attention to the manner of travel.

The bus driver died within hours after the accident, the alternate tank driver was asleep, and as a result at the trial the only witness purporting to know all of the facts was the driver of the tanker. There was considerable conflict as to the exact cause of the accident, and at least the defendants have contended that the pup trailer was perhaps out of line and skidding sideways to some extent. However, it is not necessary to go into the various claimed details for the purpose of this opinion, the evidence being construed in the light most favorable to the plaintiffs by reason of the verdict of the jury.

During the course of the trial, certain evidence of the passengers on the bus was received through their depositions. The deposition of one of these witnesses, Kenneth Moore, both direct and cross examination, was read to the jury as a part of the defendants' case. However, for some reason which does not appear in the record, the re-direct and re-cross examination was not read to the jury or offered in evidence. Thereafter, another one of the passengers who was actually present at the trial was called as a witness for the plaintiffs in rebuttal, and as a part of his testimony the following occurred:

"Q. Now, getting back to this Kenneth Leroy Moore, as I understand it you rode with him out of Gallup on the night of January the 22nd and went from there to Oklahoma City in his company. A. Yes, sir.

"Q. I will ask you to state whether or not he made any statements to you as to whether or not he was asleep or awake or had seen or knew anything about how the accident happened.

"Mr. Akin: Just a moment. I am going to object to this line of questioning in that no proper foundation has been laid for it. The witness, Moore, was not asked in his deposition if he had ever made any statements about whether he was asleep or not to this particular witness.

"Mr. Moise: May it please the Court, I have to take exception to Mr. Akin's statement. It appears in Mr. Moore's deposition in the re-cross; the redirect and the re-cross were not offered here at the time that Mr. Moore's deposition was read, but the fact of the matter is that it does appear therein. (Counsel showed a deposition to the court.) (Counsel conferred with the Court out of hearing of the Jury.)

"Q. Will you read the question to the witness, Miss Reporter?

"Reporter: Question: 'I will ask you to state whether or not he made any statements to you as to whether or not he was asleep or awake, or had seen or knew anything about how the accident happened.' A. Yes, he made a statemeent that he was asleep at the time of the accident.

"Q. He told you that he was asleep at the time of the accident? A. Yes, sir.

"Mr. Moise: That's all."

The defendants maintain with considerable force that it was prejudicial error for the court to allow this testimony to be given without sufficient foundation. There was at least an attempt to lay a foundation in the portion of Moore's deposition under the title of re-cross examination. This portion was never read to the jury. Whether it was this portion which the court examined at the time of the above quoted exchange, we do not know. However, after the trial was completed, the plaintiffs moved the court to include as a part of the transcript the balance of the deposition of the witness Moore, and the trial court directed that the same be included, although specifying that it was not ruling upon the question of whether or not it was ever offered or received in evidence.

This particular point of claimed error raises several questions which are self-evident, but we believe that they need not be answered because of the failure of counsel for defendants to properly object or to satisfactorily alert the mind of the trial court to the error which was about to be committed.

█ It should be borne in mind that the above exchange occurred at some time on the fourth day of the trial of this extended litigation after more than twenty witnesses had testified. It would appear to us that when counsel for the defendants objected that no foundation had been asked *in the deposition,* counsel for the plaintiffs pointed out to the court where *in the deposition* at least some foundation had been laid, and thereafter the examination proceeded without the court having been specifically called upon to make a ruling. If counsel for the defendants had wished to truly alert the mind of the court, it would have been a very easy matter to state for the record after the exchange at the bench what the definite ob-

jection was. As the matter stands, we do not feel that a proper objection was made, and therefore this claimed error will not be sustained, and more particularly so when we consider that the rule is for the benefit of the witness and not the parties. State v. Carabajal, 1920, 26 N.M. 384, 193 P. 406, 17 A.L.R. 1098.

◾ In connection with the above issue raised by the defendants, it is asserted that the trial court further erred in refusing to allow the defendants to rehabilitate the witness Moore, if he was impeached, through the testimony of an Arizona state policeman to whom the witness Moore gave a statement on the morning of the accident. In this connection, the following occurred:

"Q. And have you questioned Mr. Moore about this accident? A. Yes, sir.

"Q. Did you take a written statement from him? A. I did.

"Q. Did you hear his deposition read? A. Yes, I did.

"Q. Would you say that, substantially, what he told you about the accident is the same as stated in his deposition? A. Yes, sir."

Thereafter, defendants offered in evidence the written statement as corroborative of the witness Moore's testimony, and the trial judge refused to allow the same in evidence.

There is a very definite conflict in authority throughout the various jurisdictions in the United States as to whether or not evidence of prior consistent statements will be received in evidence to rehabilitate a witness after impeachment. The majority rule is to the effect that such evidence should be refused, although there is a respectible group of jurisdictions which hold to the contrary. See 140 A.L.R. 21 Annotation, particularly page 49, et seq.; and 39 Harvard L.Rev. 258. However, it should be pointed out that the officer had already answered the question that the witness Moore's testimony as given by deposition was substantially the same as given in his statement, and therefore the introduction of the written statement would be cumulative, the other answer already being before the jury and not having been stricken. Therefore, it is not necessary for us to specifically rule as to which line of authority we should follow, and we will reserve any ruling thereupon until a proper case is submitted. In this particular instance, the answer of the officer as given placed the matter before the jury and it thereafter became a question of fact for the jury to determine. We therefore find this point without merit. From an examination of the entire record of the testimony, it does not appear to us that either the introduction of the impeachment testimony or the refusal to allow the rehabilitation statement in evidence resulted in a miscarriage of justice or affected the substantial rights of the parties. 1 Wigmore on Evidence (3rd Ed.) 364.

Defendants' next contention relates to the refusal of the trial court to give an instruction on the presumption of due care of the deceased bus driver. This matter was covered in the original briefs and has subsequently been more fully submitted by supplemental briefs by both of the parties. We have given serious consideration to the arguments and authorities relied on by the defendants and have reappraised our decision in Hartford Fire Ins. Co. v. Horne, 65 N.M. ——, 338 P.2d 1067, 1071. We feel that the Hartford case is determinative of the instant case and we reaffirm our decision therein:

"We believe the correct rule is that the presumption operates to protect or shield a person in whose favor it is *invoked until credible and substantial* evidence which would support a finding is introduced to the contrary, and that it then vanishes as though it had never existed, * * *"

Here, as in the above case, we have the testimony of the truck driver as an eye-witness with the additional evidence that the bus was in the wrong lane of traffic at the point of collision. The proposed instruction was properly refused.

The defendants next assert that the trial court erred in refusing certain of the defendants' requested instructions covering a portion of the defendants' theory of the case. We have carefully considered these requested instructions in connection with the evidence introduced, and feel that the defendants' contention is not well taken. The instructions fairly present the law of the case when considered as a whole and we deem them to be sufficient. Chandler v. Battenfield, 1951, 55 N.M. 361, 233 P.2d 1047; Ferris v. Thomas Drilling Co., 1957, 62 N.M. 283, 309 P.2d 225; and Blewett v. Barnes, 1957, 62 N.M. 300, 309 P.2d 976.

The next point of contest raised by the defendants is the averment that the trial court erred in refusing to grant a new trial on the basis of newly discovered evidence.

It would seem that just after the completion of the trial and the public announcement of the jury's verdict, that a Mrs. McGee telephoned a representative of the bus company and advised him that she had been an eye-witness to the accident. Counsel for the defendants obtained a statement from her to the effect that she was driving her automobile in back of the bus on the morning of the accident, had seen the collision, but had turned off on a side road and gone to her home without stopping because she was afraid that her husband would cause her some difficulty if she became involved as a witness. Strangely enough, this story had never come to light prior to the conclusion of the trial, although the woman's name had been known to counsel for the defendants because he had heard that this person had taken some pictures of the scene of the accident. However, in running down this story, counsel for the

defendants had an inquiry made of the husband of the proposed witness and received information that the only pictures that Mrs. McGee had taken were pictures taken of the vehicles after the same were taken into the town of Lupton, Arizona. Having obtained this information, defendants' attorney went no further, believing, no doubt, that there had already been sufficient pictures taken of the vehicles, both at the scene and later, and that therefore the additional pictures would be of no use.

These matters were all brought to the attention of the trial court on proper motion and extensive argument had thereon. The defendants even had the witness present in court at the time of the hearing on the motion, in order that she might testify should the court so desire. However, the trial court determined not to hear the oral testimony at that time, and we can only surmise as to the reasons why the learned trial judge adopted this course of action. The actual ruling of the trial court was not formally made, it being apparently only a letter denying the motion, which is not a part of the transcript, and was not announced by the trial judge until after the order for appeal had been signed.

■ Here, again, with reference to this particular point, there is a great body of case law from many courts throughout the country, but we need search no further than our own decisions in order to resolve this issue. The granting of a new trial on the basis of newly discovered evidence is within the sound discretion of the trial court when certain conditions have been met. These conditions have been enumerated many times throughout our former opinions and there is no necessity that they be repeated here. United States v. Biena, 1895, 8 N.M. 99, 42 P. 70; Hancock v. Beasley, 1907, 14 N.M. 239, 91 P. 735; State v. Luttrell, 1923, 28 N.M. 393, 212 P. 739; Floeck v. Hoover, 1948, 52 N.M. 193, 195 P.2d 86; and Mitchell v. Forster, 1955, 59 N.M. 226, 282 P.2d 708. We do not have the benefit of the reasons upon which the trial judge refused to grant the new trial, but from an examination of the entire record, considered in conjunction with the motion for new trial and affidavits attached thereto, it would not appear that the newly discovered evidence would probably change the result if a new trial were granted, and in addition the evidence to a very large extent is merely cumulative or merely impeaching or contradictory. Therefore, we will determine that it was well within the proper exercise of the discretion of the trial judge to rule as he did, denying the motion.

■ Finally, the defendants contend that the verdict of the jury as to one of the plaintiffs, namely, Frank Morrison, in the amount of $60,000 is so excessive as to indicate that it was reached as a result of passion or prejudice. This verdict includes

substantial amounts which had already been paid by one of the interveners to the plaintiff Frank Morrison, for hospital and medical expenses and workmen's compensation. It should be noted that Thomas Morrison, who, incidentally, is the father of the other plaintiff, received a verdict of $57,600, which also included hospital, medical and workmen's compensation payments. However, the Thomas Morrison verdict as such is not specifically challenged as to amount.

The injuries to Frank Morrison, who was twenty-eight years of age at the time of the accident, consisted of what may or may not have been a depressed skull fracture, extensive scalp lacerations and other lacerations about the forehead and face, and, in addition, a transverse fracture of the left forearm. The arm injury was apparently the most serious of this plaintiff's disabilities and required successive operations and, according to the testimony of one doctor, a further operation is necessary. This plaintiff lost work for almost a year, principally by reason of the arm difficulty. However, he also complained of some trouble with his left leg and recurrent headaches and also claimed impaired hearing.

The defendants contend that the size of the verdict as to this plaintiff, when considered in the light of all of the evidence, forces the conclusion that the verdict was reached through passion and prejudice and also that the trial court abused its discretion in not granting a new trial upon this ground.

This matter was submitted to the trial court, a learned trial judge who had the opportunity of seeing the various witnesses, observing their demeanor, together with his observations of the attitude of the jurors, and he deemed this contention without merit in his discretion. There was no showing made to the trial court, or to this court on appeal, which would indicate that the verdict resulted from any passion or prejudice, nor is the verdict so grossly out of proportion to the injury as to shock the conscience of the court. Waldo v. Beckwith, 1857, 1 N.M. 182; Hall v. Stiles, 1953, 57 N.M. 281, 258 P.2d 386; Padilla v. Atchison, T. & S. F. Ry. Co., 1956, 61 N.M. 115, 295 P.2d 1023; Mathis v. Atchison, T. & S. F. Ry. Co., 1956, 61 N.M. 330, 300 P.2d 482; Montgomery v. Vigil, 1958, 65 N.M. 107, 332 P.2d 1023. We see no reason to disturb the trial court's findings.

For the foregoing reasons, the judgment will be affirmed; and It Is So Ordered.

LUJAN, C. J., and McGHEE and COMPTON, JJ., and D. A. MACPHERSON, Jr., District Judge, concur.