398 So.2d 980 (1981)
Jean Ann NELSON, a Widow and Personal Representative of the Estate of Frank Allen Nelson, Deceased, and for the Use and Benefit of Brian Keith Nelson and Suzanne Marie Nelson, Minor Children of the Decedent, Appellant,
v.
SEABOARD COAST LINE RAILROAD COMPANY, a Corporation, Appellee.
No. TT-443.
District Court of Appeal of Florida, First District.
May 18, 1981.
*981 Robert Jordan and R.J. Beckham, of Beckham, McAliley & Proenza, Miami, for appellant.
E. Dale Joyner, of Toole, Taylor, Moseley & Joyner, Jacksonville, and Julian Clarkson, of Holland & Knight, Tampa, for appellee.
CAWTHON, VICTOR M., Associate Judge.
The plaintiff/appellant, in a civil action brought pursuant to the provisions of the Federal Employers' Liability Act, 45 U.S.C. § 51, assigns as error the refusal of the trial court to admit into evidence a suicide note left by the deceased railroad employee, and the granting of defendant's motion for a directed verdict.
We conclude that the note was not objectionable as hearsay. It is clear from the record that the note was proffered during the trial as proof of the decedent's then existing state of mind and as such is an exception to the hearsay rule. Section 90.803(3)(a), Florida Statutes (1979). The note was perhaps the most important piece of physical evidence available as to the state of the decedent's mind immediately prior to his death. However, determining whether or not "state of mind" is relevant in this case requires a synopsis of the facts and an analysis of some of the pertinent provisions of the FELA and the decisions interpreting them.
It is undisputed that the decedent was an employee of the defendant and covered by the Act at the time of his death. He was married to the plaintiff, and the couple had two minor children who would be classified as dependents under the Act. The day before his death, the decedent was suspended without pay for questioning an administrative order which allegedly violated his employment contract. A hearing was scheduled which would almost certainly have resulted in his dismissal since the railroad administration utilized a "progressive discipline" based on an employee's personal record, and the decedent had two infractions. One was minor, and he was exonerated from the other by a Public Law Board after his death. There was evidence that a railroad workers' union had complained to management about problems of irrational and excessive discipline, but management did not respond. The evidence indicated that the decedent's suicide may have been the result of work-related stress, and that the employer's negligent hiring and training of supervisory personnel may have caused that stress.
The wording of the FELA provides that dependents of employees covered by the Act be compensated for the employee's death if he died while he was so employed and his death was caused in part by the employer's negligence. Decisions interpreting the Act indicate that there may be liability in cases where death or injury occurred when the employee was not on duty, Rivera v. Atchison, Topeka & Santa Fe Railway, 61 N.M. 314, 299 P.2d 1090 (1956), or as a result of gradual development of disease rather than physical impact, Urie v. Thompson, 337 U.S. 163, 69 S.Ct. 1018, 93 L.Ed. 1282 (1949). Except in rare cases, the jury should determine negligence and causation, Pehowic v. Erie Lackawanna Railroad, 430 F.2d 697 (3rd Cir.1970).
*982 The courts have "rejected many of the refined distinctions necessary in common-law tort doctrine for the purpose of allocating risks," Kernan v. American Dredging Co., 355 U.S. 426, 438, 78 S.Ct. 394, 401, 2 L.Ed.2d 382, 392 (1958), such as those requiring opinions based on "reasonable medical certainty," Sentilles v. Inter-Caribbean Shipping Corp., 361 U.S. 107, 80 S.Ct. 173, 4 L.Ed.2d 142 (1959), and those requiring that the negligence be a "proximate cause" of the injury or death, McCalley v. Seaboard Coast Line Railroad, 265 So.2d 11 (Fla. 1972).
In spite of the broad scope of coverage afforded by the FELA, as interpreted up to now, neither party nor this court has found a case in which the dependents of a suicide have been awarded or denied compensation under the Act. There is a minority view that one should be held responsible for his acts, and that liability for suicide should not depend on such distinctions as whether the act was the result of a resistible or an irresistible impulse. See Annot., 77 A.L.R.3d 311 (1977). This is partly because the legal and medical professions are unable to develop mutually acceptable and meaningful criteria. While this view is well-reasoned, it does not accommodate the principle that persons are normally not responsible for their acts committed while in a state of insanity. We therefore endorse what we consider to be the majority view as expressed in Tate v. Canonica, 180 Cal. App.2d 898, 914, 5 Cal. Rptr. 28, 39 (1960):
The overwhelming weight of authority is to the effect that a suicide  absent insanity  is a new and independent agency which breaks the causal connection between the wrongful act and death, precluding an action under the wrongful death statutes. * * * It has also been recognized, however, that where the suicide is committed in a state of insanity in response to an uncontrollable impulse, recovery may be had if the mental state of the deceased was caused by the defendant's wrongful act. Quoting Cauverien v. De Metz, 20 Misc.2d 144, 188 N.Y.S.2d 627 (1959).
It is the opinion of this court that FELA does not impose liability on an employer for the death of an employee who could rationally decide whether or not to kill himself. This position is consistent with the doctrine of independent intervening cause, and while it is a limitation on liability, it is not an absolute bar. As pointed out in Tate:
[W]here the negligent wrong only causes a mental condition in which the injured person is able to realize the nature of the act of suicide and has the power to control it if he so desires, the act then becomes an independent intervening force and the wrongdoer cannot be held liable for the death. On the other hand, if the negligent wrong causes mental illness which results in an uncontrollable impulse to commit suicide, then the wrongdoer may be held liable for the death." 5 Cal. Rptr. at page 40.
In other words, in order for the employer to be liable for the suicide of the deceased, it must be shown that the negligent act of the employer drove the deceased beyond the point where he could rationally decide against killing himself.
This ruling makes the state of the decedent's mind shortly before death extremely relevant to the issues in this civil action, and the suicide note admissible as evidence of that state of mind. If a jury should determine that the decedent took his life under an uncontrollable impulse and could no longer decide against killing himself, that would be a foundation for finding liability in light of other evidence pointing toward railroad negligence. A jury could conceivably find that the railroad's negligence in hiring and training of supervisory personnel caused the stress that resulted in the decedent's uncontrollable impulse to kill himself. Under such circumstances the defendant's negligent or wrongful act would be actionable. We hold therefore that the judge's refusal to admit the suicide note into evidence was error as was the directing of a verdict against the decedent's widow.
The judgment of the trial court is reversed and the cause is remanded for a trial *983 to be conducted in accordance with the holdings set forth herein.
ROBERT P. SMITH, Jr., and SHAW, JJ., concur.